NORTHEAST DATACOM, INC., ET AL. *v.*
CITY OF WALLINGFORD
(13549)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 7—decision released August 15, 1989

*Shaun S. Sullivan,* with whom was *Bennett J. Bernblum,* for the appellants (plaintiffs).

*Robert K. Ciulla,* with whom was *Ben A. Solnit,* for the appellee (defendant).

*Wesley W. Horton, David L. Fineberg* and *Kimberly A. Knox* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Charles H. Lenore* and *James Sicilian* filed a brief for the Connecticut Bankers Association et al. as amici curiae.

*Patrick W. Hanifan, Wayne S. Henderson* and *Joseph F. Brennan* filed a brief for the Greater Hartford Chamber of Commerce et al. as amici curiae.

COVELLO, J. This is an appeal from a personal property tax assessment made by the city of Wallingford. The principal issue is whether computer software[1] constitutes personal property subject to municipal taxation under General Statutes § 12-71.[2] We conclude that such software is intangible personal property and therefore not subject to the provisions of § 12-71.

---

[1] We define this term as any set of binary instructions, codes, programs or routines used to cause a computer to perform a specific task or function.

[2] General Statutes § 12-71 provides: "PERSONAL PROPERTY LIABLE TO TAXATION; DESCRIPTION; SITUS; STICKER; VALUATION. (a) All goods, chattels and effects or any interest therein, belonging to any person who is a resident in this state, shall be listed for purposes of property tax in the town where such person resides . . . ."

The appeal involves two categories of property that the assessor included on Wallingford's grand list of October 1, 1986. First, the assessor listed computer software that the named plaintiff, Northeast DataCom (NEDC), had created in the course of its business for use by its clients. The assessor also imposed a penalty for NEDC's failure to list this software. Second, the assessor listed computer hardware[3] and related equipment owned and leased by the various plaintiffs at a value that the plaintiffs claimed was far in excess of its true and actual value. NEDC and the other plaintiffs unsuccessfully appealed the assessor's determination to the Wallingford board of tax review (board).

On April 9, 1987, the plaintiffs appealed the board's decision to the Superior Court pursuant to General Statutes §§ 12-118, 12-119 and 12-53. On February 26, 1988, the plaintiffs filed an amended complaint to add to their appeal claims for relief from the assessments on the grand list of October 1, 1987. The trial court, *Hon. Joseph W. Bogdanski,* state trial referee, concluded: (1) that NEDC's computer software was tangible personal property subject to taxation; (2) that NEDC had not proved that the assessor's valuation of its computer hardware was excessive; (3) that the plaintiffs Bank of New England, Lorac Leasing Corporation, Ford Motor Credit Company and Textron Financial Corporation were estopped from claiming that the values assigned to their computer hardware were manifestly excessive because of their failure to file the statutorily required "declarations"; and (4) that the penalties assessed against NEDC for failure to declare its software were proper. The trial court thereafter rendered judgment for the defendant. The plaintiffs then appealed to the Appellate Court. We

---

[3] As distinguished from software, the term hardware refers to the computer itself and its allied peripheral equipment such as printers, modems, and so forth.

thereafter transferred the appeal to ourselves in accordance with Practice Book § 4023.

NEDC first claims that the trial court erred in concluding that its software was tangible personal property. In this connection, the court found that the software at issue had an original cost of $2,756,740. The assessor valued this property at $2,317,183. This amount "included canned software purchased by [NEDC], software customized by outside contractors for [NEDC], and custom software developed by [NEDC] itself." The trial court further found that the tapes and discs with the computer program instructions on them appeared tangible and could be "seen, touched and generally perceived by the senses." The trial court also found that "[l]ike a book, a magnetic tape with a computer program encoded on it, is made up of a physical medium component and an intangible intellectual component. . . . The fact that the author's idea exists apart from the book and is itself intangible does not lessen the book's obvious tangibility. Similarly, a music cassette tape and a movie videotape contain an intangible intellectual component that is retained in a physical medium. A cassette tape with a Beethoven symphony recorded on it and a videotape with a movie recorded on it are not rendered intangible because they contain an 'intellectual works product.' " The trial court thereafter concluded that the software was tangible personal property and, therefore, subject to taxation. We do not agree.

General Statutes § 12-71 (a) subjects to local municipal taxation "[a]ll goods, chattels and effects or any interest therein, belonging to any person who is a resident in this state . . . . " The phrase "goods, chattels and effects or any interest therein" is not defined in the statutes. While we have not had recent occasion to construe this statute, we have held that the broad

language of its predecessor[4] "was intended to cover all classes of intangible property. The term 'property,' as the word is used in statutes relating to assessment and taxation, refers to every species of valuable right or interest that is subject to ownership, has an exchangeable value, or adds to one's wealth or estate. *Eric* v. *Walsh,* 135 Conn. 85, 90, 61 A.2d 1 [1948], and cases cited; *Hartford-Connecticut Trust Co.* v. *O'Connor,* 137 Conn. 267, 272, 76 A.2d 9 [1950]." *Stirling* v. *Connelly,* 141 Conn. 483, 488, 107 A.2d 274 (1954). "The breadth and inclusive character of the list so prescribed is apparent. The General Assembly intended to include therein all types of tangible and intangible personal property." *Hartford-Connecticut Trust Co.* v. *O'Connor,* supra, 271.

These earlier holdings would provide an immediate resolution of the present controversy were it not for the fact that in 1953 General Statutes § 1745 was repealed and republished as amended.[5] The specific references to notes, bonds, stocks, moneys, credits and choses in action were deleted so that only "vessels . . . goods, chattels or effects, or any interest therein" remained subject to taxation. At the same time a new provision was added to that statute that dealt with property in towns having two or more taxing districts.[6]

---

[4] General Statutes (1949 Rev.) § 1745 made taxable "[a]ll notes, bonds and stocks, not issued by the United States, moneys, credits, choses in action, vessels, except registered and enrolled sailing vessels, except barges engaged in trade between this and other states and except registered vessels which are actually engaged in foreign commerce, goods, chattels or effects, or any interest therein . . . ."

[5] General Statutes (1953 Sup.) c. 86, § 848 (c).

[6] General Statutes (1953 Sup.) c. 86, § 848 (c) provides: "The *tangible personal property* of any person residing within a town having two or more taxing districts shall be assessed in the district in which such . . . property shall have been located the greater portion of the tax year next preceding the day on which such property lists are required to be filed in such town." (Emphasis added.)

The new language described the property mentioned above as "tangible personal property." This coupled with the fact that there is now provision in a companion statute for the inclusion on the assessor's list of "tangible personal property" belonging to non-residents; see General Statutes § 12-43; and provision for the removal from the list of erroneously included "tangible personal property";[7] see General Statutes § 12-57; causes us to conclude that after its 1953 republication, the legislature intended that General Statutes § 12-71 was thereafter to apply only to tangible personal property.

## I

In concluding that software was tangible personal property within the meaning of § 12-71, the trial court recognized that "[l]ike a book, a magnetic tape with a computer program encoded on it, is made up of a physical medium component and an intangible intellectual component." It identified the physical component as the "magnetic tape, dis[k]ette and photographs of a disc jack[et] . . . used . . . to store and transmit . . . [the] computer programs." We conclude, however, that these physical devices are only the most tangential incidents of a computer program and the fact that tangible property is used to store or transmit the software's binary instructions does not change the character of what is fundamentally a classic form of intellectual property.

Software is a variety of "literary work" covered by the Copyright Act. 17 U.S.C. §§ 101, 102 (a) and 117. To be copyrightable, an "original work of authorship," such as a program, must be "fixed in any tangible medium of expression." 17 U.S.C. § 102 (a). Despite being so fixed, the original work of authorship is legally

[7] This phrase, tangible personal property, was added by amendment in 1961. Public Acts 1961, No. 24.

distinct from the medium, and from each copy of the work, including the "material object . . . in which the work is first fixed." 17 U.S.C. § 101.

The software here cost NEDC $2,756,740. The magnetic discs and tapes cost approximately $1000. Wallingford assessed the "property" for $2,317,183. Wallingford's theory then is that if one has intangible personal property that is fixed, even temporarily, in a tangible medium, the municipal tax on tangible personal property is due based upon the value of the tangible medium plus the value of the intangible personal property. We do not agree.

In *Columbia Pictures Industries, Inc.* v. *Tax Commissioner,* 176 Conn. 604, 610, 410 A.2d 457 (1979), we held that the rental of a copy of a motion picture constituted the "lease of tangible personal property" within the meaning of General Statutes § 12-407 (2) and that a sales tax was due based upon the value of the lease. We hastened to point out that "[t]he production cost for the film was approximately $3,500,000 . . . . The value or cost of the actual film bears little or no relation at all to the payments contracted for pursuant to the agreement between the exhibitor and the distributor. The payments are based upon the number of persons expected to view the motion picture." Id., 606. We thus inferentially acknowledged that there was an intangible, intellectual component in the motion picture that was not involved in the valuation of the film's lease to a Connecticut distributor. "It is true . . . that a copyright may be an incorporeal right to publish and does exist detached from the personal property out of which it arises. 18 Am. Jur. 2d, Copyright and Literary Property § 18." Id., 608.

When one buys a video cassette recording, a book, sheet music or a musical recording, one acquires a limited right to use and enjoy the material's content.

One does not acquire, however, all that the owner has to sell. These additional incidents of ownership include the right to produce and sell more copies, the right to change the underlying work, the right to license its use to others and the right to transfer the copyright itself. It is these incidents of the intellectual, intangible component of the software property that Wallingford has impermissibly assessed as tangible personal property[8] by linking these incorporeal incidents with the tangible medium in which the software is stored and transmitted.[9]

## II

NEDC next claims that the trial court erred in sustaining the valuations assigned by Wallingford's assessor to the computer hardware and related equipment owned and leased by NEDC. The assessor valued this hardware at $4,104,668. NEDC's appraised value was

---

[8] In so holding we join a number of other jurisdictions that have held that computer software constitutes intangible property. See *District of Columbia* v. *Universal Computer Associates, Inc.*, 465 F.2d 615 (D.C. Cir. 1972); *State* v. *Central Computer Services, Inc.*, 349 So. 2d 1160 (Ala. 1977); *Honeywell Information Systems, Inc.* v. *Maricopa County*, 118 Ariz. 171, 575 P.2d 801 (1977); *First National Bank of Springfield* v. *Department of Revenue*, 85 Ill. 2d 84, 421 N.E.2d 175 (1981); *Appeal of AT&T Technologies, Inc.*, 242 Kan. 554, 749 P.2d 1033 (1988); *Matter of Protest of Strayer*, 239 Kan. 136, 716 P.2d 588 (1986); *CompuServe, Inc.* v. *Lindley*, 41 Ohio App. 3d 260, 535 N.E.2d 360 (1987); *Commerce Union Bank* v. *Tidwell*, 538 S.W.2d 405 (Tenn. 1976); *First National Bank of Fort Worth* v. *Bullock*, 584 S.W.2d 548 (Tex. Civ. App. 1979); but see *Measurex Systems, Inc.* v. *State Tax Assessor*, 490 A.2d 1192 (Me. 1985); *Comptroller of the Treasury* v. *Equitable Trust Co.*, 296 Md. 459, 464 A.2d 248 (1983); *Hasbro Industries, Inc.* v. *Norberg*, 487 A.2d 124 (R.I. 1985); *Citizens & Southern Systems, Inc.* v. *South Carolina Tax Commission*, 280 S.C. 138, 311 S.E.2d 717 (1984); *Pennsylvania & West Virginia Supply Corporation* v. *Rose*, 368 S.E.2d 101 (W. Va. 1988).

[9] This view comports with a recent enactment by the General Assembly. Public Acts 1989, No. 89-251, § 193, provides that "[p]ersonal property subject to taxation under [General Statutes § 12-71] shall not include computer software, except when the cost thereof is included, without being separately stated, in the cost of computer hardware."

$1,608,763. Examination of the record discloses that the heart of the dispute involved the length of time over which the property in question was to be depreciated. NEDC's appraiser selected a much shorter life for the equipment than that adopted by the Wallingford assessor to the end that the equipment's value was claimed to have significantly depreciated since its purchase. Having heard both parties, the trial court concluded that, with respect to NEDC's claim, it "could not credit a theory that produces such results."

"[I]n any assessment case, the trial court is confronted with conflicting accounting methods; giving credence to one over the other is a proper exercise of its function as a trier of fact. *Connecticut Light & Power Co.* v. *Monroe,* 149 Conn. 450, 455, 181 A.2d 118 [1962]; *National Folding Box Co.* v. *New Haven,* [146 Conn. 578, 586, 153 A.2d 420 (1959)]. Under the facts of this case the trier was not in error in adopting the depreciation formula used by the defendant.

"Courts must be cautious in choosing between conflicting systems since 'those calculations, although made in the best of faith, can lead to widely divergent results.' *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 674, 154 A.2d 608 [1959]." *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 666–68, 364 A.2d 178 (1975). Based upon these principles, we see no error in the trial court's determination here.

## III

The plaintiffs Bank of New England, Lorac Leasing Corporation, Ford Motor Credit Company and Textron Financial Corporation argue that the trial court erred in concluding that they were estopped from claiming that the value assigned to their computer hardware was manifestly excessive. The basis of the trial court's estoppel ruling was its predicate finding that these plaintiffs "fail[ed] to file any declaration with Walling-

ford, even after being specially sent declaration packets. The town's assessor ultimately filled out their forms himself, based upon information provided by coplaintiff Northeast DataCom.''

These plaintiffs concede that they did not file the required declarations[10] but contend that this fact is irrelevant as NEDC provided the assessor with a complete listing of their computer equipment along with estimates of its fair market value. Further, they argue that there was no finding of prejudice to Wallingford as the result of their failure to file the required declarations and absent such prejudice, an estoppel cannot exist. While we agree that there was no legal basis for finding an estoppel; see *John F. Epina Realty, Inc.* v. *Space Realty, Inc.*, 194 Conn. 71, 85, 480 A.2d 499 (1984); we conclude that the trial court's refusal to pursue the plaintiffs' appeals was legally correct and therefore find no reversible error.

General Statutes § 12-114 provides: "The board of tax review shall not reduce the list of any person, or the valuation . . . of any item of property therein contained . . . if he has refused or unnecessarily neglected to give in his sworn list to the assessors as prescribed by law." Since a board of tax review is barred by this statute from reducing the valuation of any property belonging to a person who has not filed

[10] General Statutes (Rev. to 1987) § 12-42 provides: "Each resident of any town liable to give in a list and pay taxes therein shall, except as otherwise specially provided by law, on or before the first day of November, annually, give in his list, made as prescribed by law. . . . If he fails to file such list, the assessors shall fill out a list for him, putting therein all property which they have reason to believe is owned by him, liable to taxation, at the percentage of its actual valuation, as determined by the assessors in accordance with the provisions of sections 12-64 and 12-71, from the best information they can obtain, and add thereto ten percent of such assessment." The penalty rate in this statute was raised to twenty-five percent by Public Acts 1987, No. 87-245, §§ 2, 10.

a sworn list, it follows that the customary appeal to the Superior Court authorized by General Statutes § 12-118[11] from the board's failure to reduce the assessor's valuation, is also unavailable in such circumstances. One cannot be heard to complain of the board's failure to do what it is statutorily prohibited from doing. "It is the duty of each taxpayer, as a personal obligation, to file with the assessors a list of his taxable property and furnish the facts upon which valuations may be based. *West Haven* v. *Aimes,* 123 Conn. 543, 546, 196 A. 774 [1938]; *Pitt* v. *Stamford,* 117 Conn. 388, 393, 167 A. 919 [1933]. If he fails to do so, the assessors are only required to act upon 'the best information [they] can obtain'; [General Statutes § 12-42]; *Hartford* v. *Champion,* 54 Conn. 436, 439, 7 A. 721 [1887]; and the taxpayer cannot justly complain if the assessors, acting in good faith, make an error in judgment in listing and valuing his property. *Ponemah Mills* v. *Lisbon,* 89 Conn. 435, 438, 94 A. 919 [1915]." *Cooley Chevrolet Co.* v. *West Haven,* 146 Conn. 165, 169, 148 A.2d 327 (1959).

These plaintiffs, however, have also appealed the assessor's valuation pursuant to General Statutes § 12-119.[12] However, "[t]he remedy given by [§ 12-119] . . . is not [an] alternative to an appeal to the board of tax review and from it to the courts under § 12-118."

---

[11] General Statutes § 12-118 provides: "Any person . . . claiming to be aggrieved by the action of the board of tax review in any town or city may . . . make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated . . . ."

[12] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court . . . ."

Id., 166. While there is no mandatory formula for determining what is "manifestly excessive"; *National Folding Box Co.* v. *New Haven,* supra, 585; *Sibley* v. *Middlefield,* 143 Conn. 100, 105, 120 A.2d 77 (1956); *Cohn* v. *Hartford,* 130 Conn. 699, 705, 37 A.2d 237 (1944); *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 231, 188 A. 433 (1936); it is clear that § 12-119 is not available to address simple disputes concerning valuation of personal property. *Connecticut Coke Co.* v. *New Haven,* supra. "Our statutes provide a method by which an owner of property may directly call in question the valuation placed by assessors upon his property by an appeal to the board of relief, and from it to the courts. General Statutes [§§ 12-118, 12-53] . . . . These statutes limit to a short period the time within which the property owner can seek relief under them and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes. The remedy given by [§ 12-119] which may be invoked up to the expiration of one year . . . certainly could not have been intended as a remedy alternative to an appeal to the board of relief where the claim is merely that the property has been overassessed; it is rather to be regarded as a remedy to meet situations of a different character." *Cohn* v. *Hartford,* supra, 702–703. The sole claim of these plaintiffs is that their computer hardware was overvalued. This being the case, the procedure to address that issue was by way of appeal to the board of tax review in accordance with General Statutes §§ 12-118 and 12-53. Since this was the only method to raise the issue of a simple overvaluation, the trial court correctly dismissed this portion of the appeal when it found that these plaintiffs had not filed the required valuation data with the assessor, thereby preventing the board from granting any relief.

## IV

Finally, NEDC claims that Wallingford's levy of a penalty assessment of $259,986 for NEDC's failure to list its computer software as tangible personal property and because it allegedly understated the value of its computer hardware is without legal basis. We agree. First, there was no reason for NEDC to list its software as it was not tangible personal property. Second, there is no statutory authority for the levy of a penalty assessment for understating the value of assessable property. General Statutes § 12-42[13] authorizes a penalty only for failing to file a list. General Statutes § 12-53b[14] authorizes a penalty only for property omitted from a list.

There is error in part, the judgment is set aside with respect to the assessment of NEDC's software and the assessment of a penalty, and the case is remanded to the trial court with direction to modify the judgment to sustain NEDC's appeal in respect to the software assessment and to vacate the order concerning interest and penalties.

In this opinion the other justices concurred.

---

[13] See footnote 10, supra.

[14] General Statutes § 12-53 (a) provides: "ADDITION OF OMITTED PROPERTY TO LIST. (a) During the period prescribed by law for the completion of their duties the assessor or board of assessors of each town shall add to the list given in by any person and made according to law any taxable property which they have reason to believe is owned by him and has been omitted from such list, and property so added shall be assessed at the percentage of the actual valuation thereof, as determined by the assessor or board of assessors in accordance with the provisions of sections 12-63, 12-64 and 12-71, from the best information the assessor or board of assessors can obtain, and twenty-five per cent of such assessment shall be added thereto. The assessor or board of assessors shall notify such person, in accordance with section 12-55, of any such increase in the assessed valuation." The penalty rate in this statute was raised from ten percent to twenty-five percent by Public Acts 1987, No. 87-245, §§ 4, 10.