[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Anthony Reynaud has filed this appeal challenging the personal property tax assessment on plaintiff's video cassette tapes. In the alternative, the plaintiff has filed an amended complaint on February 17, 1993 claiming the video cassette tapes are intangible and thus not taxable under Conn. Gen. Stat. Sec. 12-71.
The plaintiff submitted a full list of video cassette tapes upon which the assessor based her assessment. The video tape cassettes were assessed using the cost minus depreciation method, arriving at a per tape assessment of $10.59. The plaintiff appealed the assessment as being excessive to the Board of Tax Review which reduced the assessment from $55,750 to $43,760.
The burden of proof rests with the plaintiff when claiming an illegal tax was imposed. Faith Center, Inc. v. Hartford, 192 Conn. 434, 437 (1984), cert. denied, 469 U.S. 1018. The plaintiff asserts that the case of Northeast DataCom, Inc. v. Wallingford, 212 Conn. 639 (1989), which ruled computer software is intangible and therefore not subject to tax, prevents the taxing of the video cassette tapes held in plaintiff's store. Both the reasoning of Northeast DataCom and the inherent differences between computer software and video cassette tapes support the defendant's argument that video cassette tapes are fully taxable as tangible personal property. CT Page 2654
Conn. Gen. Stat. Sec. 12-71(a) provides:
 All goods, chattels and effects or any interest therein, belonging to any person who is a resident in this state, shall be listed for purposes of property tax in the town where such person resides. . .
The term "goods, chattels and effects" was ruled to be synonymous with "tangible personal property" by the court in Northeast DataCom, Inc., supra, 644. The court concluded that computer software, which they defined to be a set of binary instructions, codes or programs or routines used to cause a computer to perform a specific task or function, Northeast DataCom, Inc., supra 640, fn. 1, was intangible and therefore not subject to taxation.
In Northeast DataCom the court defined the intangible intellectual component of software and ruled the town was taxing the intangible component. In the present case the town of Winchester taxes tangible video cassette tapes and not the intellectual component of that tape. The supreme court in Northeast DataCom recognized the distinction between the tangible and intangible components of certain personal property and ruled that the taxing of the intellectual component is illegal. Northeast DataCom, Inc., supra, 645.
In making the distinction between tangible and intangible, the court in Northeast DataCom, Inc. relied upon Columbia Pictures Industries, Inc. v. Tax Commissioner, 176 Conn. 604 (1979). Columbia Pictures Industries, Inc. is directly on point with the present controversy. At issue was the rental of movies between a distributor and exhibitor. The plaintiff argued that such a rental agreement is a "license to exhibit publically what is on the film, and, therefore, is the transfer of an intangible right for a limited period of time and not a leasing or rental of tangible personal property. . ." Columbia Pictures Industries, Inc., supra at 607. The court in Columbia Pictures Industries, Inc. rejected the argument. It separated the intangible component of the copyright and the acquisition of services performed in producing the film from the simple acquisition of the film in its finished state in order to show it for profit. Columbia Pictures Industries, Inc., supra 610. The exhibitor only leased the film in its finished state. The acquisition of the finished product was the acquisition of tangible property. As the court stated:
 In examining the character of the present agreement, although called a license, it is evident that under it the plaintiff's object was to acquire possession of the film in its finished state in order to reproduce it for profit rather than to acquire the services to perform in producing the film. CT Page 2655 (cite omitted) Although as the Plaintiff argued this performance could have been telecast without the film or could have been performed live on stage, the fact is, that was not the case. Rather, the performances were shown on film, which is tangible personal property. The transaction was therefore a lease of tangible personal property.
Columbia Pictures Industries, Inc., supra 610.
The court recognized the tax was based on a value arrived at by looking to the number of persons expected to view the motion picture, that value being $595.00. The tax was not being imposed on a value based upon the cost of the actual film, the court noting the production costs alone were $3,500,000.00. $595.00 represented the market value of the tangible component of the move, $3,500,000.00 represented the fair market value of the intangible component. Columbia Pictures Industries, Inc., supra 606. Northeast DataCom ruled taxing the latter is an illegal tax on intangible personal property. The Town of Winchester is not taxing the tape based upon a value arrived at by including production costs of the movie on the tape. For this court to rule that video cassette tapes are tangible personal property, it need look no further than Columbia Pictures Industries, Inc. There is no difference between a movie on a reel or a movie on a video cassette.
The court in Northeast DataCom adopted the reasoning of Columbia Pictures Industries, Inc., and thus recognized the rental of a motion picture was a lease of tangible personal property, so long as the tax is not an attempt to tax the intellectual component of the movie. Northeast DataCom, supra, 645-646.
The court in Northeast DataCom provided an outline of the intangible elements of certain personal property, identifying such property as video cassettes, books, sheet music and musical recordings:
1. The right to produce and sell more copies.
2. The right to change the underlying work.
3. The right to license its use to others.
4. The right to transfer the copyright itself.
Northeast DataCom, Inc., supra, 646. "It is these incidents of the intellectual intangible component of the software property that Wallingford has impermissibly assessed as tangible personal property by linking these CT Page 2656 incorporeal incidents with the tangible medium in which the software is stored and transmitted." Northeast DataCom, Inc., supra, 646.
The Town of Winchester is doing none of the above by taxing the video cassette tapes. It is not taxing the intangible elements of the video cassette tapes as Mr. Reynaud possesses none of those elements. Mr. Reynaud cannot produce and sell more copies of the video cassette tapes. He cannot change the underlying work of the video cassette tapes. He cannot allow other video stores to use the video cassette tapes and he has no rights or powers to the copyright of the movie itself.
As in Columbia Pictures Industries Inc., the Town of Winchester is taxing the tangible cassette. The assessment is based upon the value of the finished product. The assessment is not based upon the value of the other rights which are retained by the picture company which produced the film. The town does not seek to tax that intangible property.
Not only does the reasoning of Northeast DataCom and Columbia Pictures Industries, Inc. support the defendant, an examination of the inherent differences in the computer software at issue in Northeast DataCom and the video cassette tapes at issue here supports defendant's assertion that the video cassette tapes are tangible.
The phrase "tangible personal property" is not expressly defined in Connecticut's personal property tax statutes. This court must therefore construe the phrase in accordance with its ordinary meaning. Doe v. Manson,183 Conn. 183, 186 (1981). The commonly understood meaning of "tangible" is, "capable of being touched; discernible by the touch; material or substantial". The Random House Dictionary of the English Language at 1941 (2d ed. 1987).
Computer software exists separately from the medium it is contained on. See District of Columbia v. Universal Computer Associates, Inc.,465 F.2d 615 (D.C. Cir. 1972). It may be located on a disc but can be transmitted electronically or from another computer or on telephone lines. The film on a video cassette tape can only be used, or transmitted through that video cassette tape. Mr. Reynaud can only rent the movie by renting the tangible physical video cassette tape — the film and the video cassette tape are inseparable. This was recognized by the Court of Illinois in First National Bank of Springfield v. Department of Revenue, 421 N.E.2d 175, 178
(Ill. 1981) as follows:
 The [computer] tapes were certainly not the only medium through which the information could be transferred. In this way, the tapes differ from a movie film, a phonograph record CT Page 2657 or a book, whereby the medium used are the only practicable ways of preserving those articles.
Id.
In addition, in Northeast DataCom the magnetic discs and tapes were purchased separately from the software. Northeast DataCom, Inc., supra 645. The software would then be encoded on the discs. Not so with Mr. Reynaud's video cassette tapes. The cassettes are purchased as a whole. In fact, he would be committing a criminal act if he attempted to place the movie in a blank video cassette tape. Again, the movie is inseparable from the cassette and is thus tangible.
Finally, the court can examine what is purchased when Mr. Reynaud buys a $65.00 copy of "Aladdin". He has purchased tangible personal property worth $65.00, by his action of paying for the movie he has so acknowledged. He is not buying the exclusive right to reproduce and sell unlimited copies of the movie, a cost of millions of dollars, nor is the Town of Winchester taxing him on the market value of world publication rights.
The legislative intent demonstrates that video cassette tapes are taxable property under Conn. Gen. Stat. Sec. 12-71(a). The legislature has specifically provided for the tax exemptness of computer software. Conn. Gen. Stat. Sec. 12-71(e)(1) provides:
 Personal property subject to taxation under this chapter shall not include computer software, except when the cost thereof is included, without being separately stated in the cost of the computer hardware. "Computer software" shall include any program or routine used to cause the computer to perform a specific task or set of tasks, including, without limitation, operational and applicational programs and all documentation related thereto.
There is no such statute to cover video cassette tapes. Nor can a plain reading of the statute place video cassette tapes within the definition of computer software. The often used maxim of statutory construction, expressio unius est exclusio alterius — if one thing is said it is presumed that other things are not intended. Marcolini v. Allstate, Insurance Company, 160 Conn. 280, 283 (1971), supports the defendant's position that the legislature did not intend for video tape cassettes to be deemed intangible and therefore not taxable. By explicitly eliminating the tax for computer software but not including video cassette tapes, audio cassette tapes, records, etcetera, it is clear that the legislature CT Page 2658 did not intend to provide video cassette tapes with an exemption. If the legislature so intended, it would have provided explicitly as it did with computer software. The only conclusion is video cassette tapes are included under the definition of goods, chattels and effects of Conn. Gen. Stat. Sec. 12-71(a).
The method of valuation used by the town's assessor is proper, at arriving at the true and accurate value of the video cassette tapes, and has been approved by the Supreme Court of Connecticut, most recently in Northeast DataCom v. Wallingford, supra.
The trial of the issue of valuation is a trial de novo. Yale University v. New Haven, 169 Conn. 454, 465 (1975). In a trial de novo, "The court, without reference to an administrative record, receives evidence and acts as the finder of fact." O'Rourke v. Stamford, 179 Conn. 342,345 (1978). Valuation of property for assessment purposes is a question of fact for the trier. Tucker v. Hartford, 15 Conn. App. 513, 517 (1988), cert. denied 209 Conn. 807 (1988). The court must find the true and actual value of the video cassette tapes. Tucker, supra, 518. Conn. Gen. Stat. Sec. 12-63. The burden of proof to establish the true and actual value of the video cassette tapes rests with the taxpayer. Faith Center, Inc. v. Hartford, 192 Conn. 434 (1984), cert. denied 469 U.S. 1018 (1984). In arriving at the value the court can weigh the opinion of experts, the claims of the parties and the court's own general knowledge of the elements going to establish value. Tucker, supra, 517.
Although the court is free to adopt any method it chooses to arrive at the true and actual value, Second Stone Ridge Cooperative Corporation v. Bridgeport, 220 Conn. 335, 342 (1991), the method used by the assessor is considered. Leonard Building Corp. v. New Britain, 146 Conn. 681 (1959). In fact, the court may assess the property at a greater amount than that proposed by the assessor. Tucker, supra, 516-517, O'Brien v. Board of Tax Review, 169 Conn. 129, 132 (1975).
This court adopts the method used by the town's assessor, cost minus depreciation, as that method has been accepted as a valid means of valuation by the courts in Connecticut. Bridgeport Gas Company v. Stratford,153 Conn. 333, 336 (1966); Bridgeport Hydraulic Company v. Stratford,139 Conn. 388 (1953); Northeast DataCom, Inc. v. Wallingford, supra, 647.
In arriving at the assessment of the video cassette tapes the Town of Winchester assessor used the Connecticut Confidential Report for Personal Property used by assessors throughout the State of Connecticut in assessing personal property. The report uses a method of costs minus depreciation, that is the total cost of the tapes when purchased, depreciated each year CT Page 2659 depending on the age of the personal property. The report allows two methods of depreciation:
1. Straight Line Method: 2. Accelerated for Computer Equipment:
 First year: 95%; First year: 95% Second year: 80%; Second year: 80% Third year: 70%; Third year: 60% Fourth year: 60%; Fourth year: 50% Fifth year: 50%; Fifth year: 40% Sixth year: 40%; Prior years: 30% Prior years: 30%.
The straight line depreciation schedule could have been used by the Town of Winchester Assessor but was not. Nor did the assessor use the accelerated schedule. The testimony shows that the assessor adopted an even more favorable depreciation schedule for the plaintiff of 80%, 60%, 40%, 30%, arriving at a per tape assessment of $10.59. The evidence shows that the owners of video stores are assessed at a greater amount than Mr. Reynaud, some almost double what Mr. Reynaud pays on his video cassette tapes.
The court finds that video cassette tapes are tangible personal property and fully taxable and therefore the method supplied by the assessor of cost minus depreciation is a logical and accurate method of arriving at the true and actual value of video cassette tapes. For the reasons stated the appeal is dismissed.
PICKETT, J.