[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
 a.
The plaintiff Atlantic Aerospace has filed the instant appeal challenging the decision of the defendant Board of Tax Review of the Town of Newington upholding the October 1, 1992 tax assessment for the plaintiff's commercial personal property. The Town assessed the fair market value of the property as follows:
Property Type
 Machine $8,743,714 Furniture 124,000 EDP Equipment 261,857 Cables, conduits, etc. 4,400 New Machinery 777,357 ---------- 9,911,329 Exemption (777,357) ----------- Total $9,108,257
The plaintiff appealed to the Board of Tax Review and the Board denied the appeal on March 3, 1993. (Exhibit B).
 b.
The plaintiff corporation, a division of Textron, Inc., manufactures parts for jet turbine engines. The subject facility employs approximately 180 people in a 380,000 square foot plant. According to the testimony of Ted Budney, the acting plant manager, only 45% of the facility or 50% of the machinery is now being utilized as a result of the worldwide downturn in the aerospace market. The plaintiff has sold some of the spare machinery, but most will remain idle as there is CT Page 8519 no foreseeable need. Atlantic Aerospace's revenues have declined substantially from 1987 to 1993.
Mr. Bruce Wallman, the controller of Atlantic Aerospace, testified that he and George Windish, a former employee, filled out and submitted the personal property declaration (Exhibit C) according to the Town's instruction sheet. (Exhibit E).[1]
Anthony J. Homicki, Newington's assessor since 1987, testified that the declaration form is not property specific but rather only requires the cost and age of all machinery. In a conversation with Mr. Windish, he advised that this form was the only written form available for the declaration of personal property and that its fixed depreciation format was required by statute. He noted that he met with a representative of the plaintiff, Mr. Rich Brown in January 1993, discussed the methodology and reviewed an analysis which he found lacking in back up data. (Exhibit G). He also testified that he inspected the Atlantic facility in April 1993 at a meeting which included a two hour tour of the plant.
 II. a.
The issue in this tax appeal, as in most others, concerns the value placed on plaintiff's property by the Town. General Statutes § 12-63 sets forth the rule for both real and personal property. The applicable portion states: "[t]he present true and actual value . . . shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale."
As clear as this standard may appear, it is the genesis for the present dispute. Simply put, the defendant maintains that due to administrative difficulties of collecting and obtaining current market data for placing a value on used machinery, it has adopted a straight line fixed depreciation schedule for all property. Not only does this method enable the assessor to determine a value easily, it complies, the defendant argues, with the statutory prohibition against using data from forced or auction sales.
The plaintiff argues that this method is first, unlawful, CT Page 8520 and second, should in any event, not be utilized where the taxpayer has provided credible data as to the personal property's actual fair market value.[2]
 b. The court performs a double function on an appeal from a board of tax review. First, it must determine the judicial question whether the appellant has been aggrieved by such action on the part of the board as will result in the payment of an unjust and, therefore, a practically illegal tax. Secondly, if that question is answered in the affirmative, the court must proceed to exercise its broad discretionary power to grant relief.
Sibley v. Middlefield, 143 Conn. 100, 105 (1956).
"A taxpayer who is aggrieved by the decision of the board of tax review has an appeal to the courts where the matter is tried de novo." Sibley v. Middlefield, supra, 106. The ultimate question is the ascertainment of the true and actual value of the plaintiff's property." Hutensky v. Avon,163 Conn. 443, 437 (1972). "If the court finds that the property has been in fact overvalued, it has the power to, and should correct the valuation." Id., 437.
 c.
The defendant argues that Atlantic is precluded from challenging the assessment since it filed the declaration (Exhibit C) without any indication that it disagreed with the provisions therein. Indeed, it refers this court to the recent decision of IBM v. Board of Tax Review, 227 Conn. 826 (1993) in which the taxpayer, having submitted a somewhat similar declaration, with no protestation, also claimed that due to the requirements of the form, it was prevented from presenting additional evidence. It should be noted that unlike the present case, the declaration in IBM did include a caveat which provided that ". . . such property has been reasonably described and its value fairly represented. . ." (Memorandum of Decision, Schaller, J.). Judge Schaller, however, rejected the taxpayer's argument "because there is no statutory basis which CT Page 8521 precludes the introduction of such evidence at the time of the assessment." Id., 41.
In this case, the testimony indicates that although Mr. Windish knew Atlantic could discuss the submission with Assessor Homicki, he did not do so prior to submission. Additionally, he indicated that he knew he could supply additional information. Indeed, Mr. Windish and Mr. Homicki spoke by telephone in September 1992 about different aspects of the declaration/assessment methodology.
The taxpayer hired Duchaime McMillen Associates, Inc., an assessment consultant, to assist in the valuation of its property. Mr. Brown of Duchaime contacted Mr. Homicki on or about January 26, 1993, after the submission of the declaration, concerning the assessment methodology and submitted Exhibit G, the property assessment analysis. Mr. Homicki testified, however, that he gave the report little credence since it did not contain the credentials of the person who prepared it, a reference on methodology, or any information on comparables.
Mr. Homicki acknowledged that he met with officials from Atlantic in April 1993 at the plant and did inspect the facility and its machinery. He did not change his decision as a result of the inspection or a further review of the declaration material.
 d.
The plaintiff has challenged the fixed depreciation methodology utilized by the Town. Mr. Steve Piletz of National Valuation testified for the plaintiff concerning a list he prepared of each piece of machinery. (Exhibit D). Although he inspected the machinery on October 1, 1993, he assessed a value as of October 1, 1992 based on actual sales (if any) of similar equipment and a cost less technical and functional obsolescence value. He indicated that each piece depreciates differently based, in part, on the serviceable life of the unit and certain industry or governmental schedules. Mr. Piletz also testified that he used auction data, after making appropriate adjustments, since it was appropriate to use all data available to determine value. The plaintiff argues that this method should be utilized by the Town, not the fixed depreciation method.[3];[4]
This court will not address the above issue in this
CT Page 8522 appeal since the IBM case is controlling. Our Supreme Court noted therein, at 829,
 It is well settled that it is the responsibility of the taxpayer to provide the assessor with sufficient facts to value personal property for tax purposes. Northeast Datacom, Inc. v. Wallingford, 212 Conn. 639, 649, 563 A.2d 688 (1989); Cooley Chevrolet Co. v. West Haven, 146 Conn. 165, 169, 148 A.2d 327 (1959); Pitt v. Stamford, 117 Conn. 388, 393, 167 A. 913 (1933). "If [the taxpayer] fails to do so, the assessors are only required to act upon the best information they can obtain . . . and the taxpayer cannot justly complain if the assessors, acting in good faith, make an error in judgment in listing and valuing [its] property." (Citations omitted; internal quotation marks omitted). Northeast Datacom, Inc. v. Wallingford, supra.
In this case, the plaintiff could have, as it had in the past, provided the Town with sufficient factual information in an attempt to adjust the assessment. It could have presented a report similar to that prepared by Mr. Piletz. It did not. The taxpayer simply failed to meet its burden for the 1992 assessment and now is making this facial challenge. The court does not accept the argument that the taxpayer was somehow bullied into compliance as a result of certain statements on the declaration form. The obligation to supply information is not a new rule. See West Haven v. Aimes, 123 Conn. 543, 546
(1938). As noted by the court in IBM, "IBM was not prevented from providing a rider or other addendum to the assessor's form to contest or otherwise suggest an alternative depreciation schedule . . . ." IBM, supra, 828-829. Indeed, Exhibit E, the instruction sheet, notes "[a]ll messages should be on a separate sheet signed and dated."
Under the IBM rule, this court finds that the taxpayer is not aggrieved and will therefore not reach the question of the validity of the assessment. Sibley v. Middlefield, supra, 105. The appeal is therefore dismissed.
MARSHALL K. BERGER, JR. CT Page 8523 JUDGE, SUPERIOR COURT