[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff seeks damages for some forty five photographic transparencies that were lost in transit with Federal Express Corporation.[1] According to the two count complaint, the defendant Avanti Press, Inc. requested that the plaintiff send it the transparencies to review for use in its greeting card collection. The CT Page 12020 plaintiff alleges that the transparencies had a value of $67,000.
Both parties have moved for summary judgment. The plaintiff, by motion filed May 4, 2001, claims that no genuine issues as to any material fact exists as to liability in that the risk of loss for the lost transparencies was upon the defendant so that it is liable for the value of the transparencies. The plaintiff relies on his affidavit and other deposition testimony.
By motion filed May 3, 2001, the defendant claims that as to both counts no genuine issues of material fact exist so that judgment should enter in its favor. First it argues that because the Uniform Commercial Code ("UCC") does not apply to the subject transaction, the risk of loss remained with the plaintiff at all times. It then argues that there is no genuine issue of material fact that the defendant breached a contract. The defendant attached the deposition testimony of the plaintiff and the defendant's employee, Marion Gotbetter.
As to the second count asserting a bailment claim, the defendant concedes the relationship of bailment but argues that no genuine issue as to a material fact exists as to the care taken by the defendant in handling the plaintiffs transparencies. Finally, as an alternative basis to enter summary judgment in its favor on both counts, the defendant argues that as a third party beneficiary to the contract between the plaintiff and Federal Express, the defendant's liability is limited to the $100 the plaintiff has recovered pursuant to the terms of the shipping contract with Federal Express.
For purposes of this motion, the following facts appear undisputed and pertinent. On or about November 23, 1998, the parties discussed the defendant reviewing transparencies to determine if it would obtain a license from the plaintiff to use them in its greeting card collection. On or about that same day the plaintiff faxed a document entitled "Stock Photo Requisition" to the defendant. The plaintiff claims that he received a signed copy of the stock photo requisition document from the defendants. The plaintiff has not produced an original signed document, nor any signed copy of that document. The defendant's employee, Marion Gotbetter, who dealt with the plaintiff, has no recollection of signing and returning the stock photo requisition document. The defendant provided the plaintiff with its Federal Express account number. On November 25, 1998, the plaintiff packaged forty five transparencies and deposited the package with Federal Express for delivery to the defendant. The package was never delivered to the defendant; Federal Express lost the package.
Summary judgment must be granted if the pleadings, affidavits, and CT Page 12021 other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Appleton v. Board ofEducation, 254 Conn. 205, 209 (2000); Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387, 397
(2000); Miles v. Foley, 253 Conn. 381, 385 (2000). A "material" fact is one which will make a difference in the outcome of the case. Morasciniv. Commissioner of Public Safety, 236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist.Michaud v. Gurney, 168 Conn. 431, 433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Wilson v.New Haven, 213 Conn. 277, 279 (1989); Mac's Car City, Inc. v. AmericanNational Bank, 205 Conn. 255, 261 (1987). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Sherwood v. Danbury Hospital,252 Conn. 193, 201 (2000).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . [the nonmovant] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with . . . evidence disclosing the existence of such a disputed issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Internal quotation marks omitted.) Home InsuranceCo. v. Aetna Life Casualty Co., 235 Conn. 185, 202 (1995).
The issue common to both motions is the risk of loss issue. The plaintiff claims that the UCC does or should apply to place the risk of loss on the defendant. The defendant responds that the UCC is inapplicable because the transaction was not a sale, nor was it analogous to any transaction to which the UCC applies.
Article Two of the UCC (Article Two) applies to the sale of goods in Connecticut. The plaintiff specifically relies on the section pertaining to risk of loss. "Where a contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier. . . ." General Statutes § 42a-2-509 (1).
The plaintiff sought to enter into a license agreement with the CT Page 12022 defendant whereby the defendant could reproduce certain photographic transparencies owned by the plaintiff. The transaction cannot be characterized as a sale because it does not contemplate the passage of title from the plaintiff to the defendant. See General Statutes §42a-2-103 (1)(d) (a "seller" is "a person who sells or contracts to sell goods"); General Statutes § 42a-2-106 ("a `sale' consists in the passing of title from the seller to the buyer for a price"). Moreover, licenses are not "goods" as defined in Article Two because they are not movable or tangible. See General Statutes § 42a-2-105 (1) ("`Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale"). The language of the section of Article Two pertaining to risk of loss requires both a seller and the shipment of goods.
The plaintiff, however, correctly points out that courts refer to the UCC "as a source of analogy for emergent common law." Normand JosefEnterprises v. Connecticut National Bank, 230 Conn. 486, 501 (1994). While the plaintiff has not supplied, and the court has not found, authority for the proposition that this court must apply Article Two in its entirety to cases falling outside its scope, several Superior Court decisions have held that its unconscionability provision applies to leasing agreements.[2] See Matka Corporation v. Tolland County Times, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 506305 (March 22, 1993, Wagner, J.). One such decision reasons that both sales and leases are transactions in goods. Id., citing Brownv. VC Enterprises, Superior Court, judicial district of New London at Norwich, Docket No. 091506 (August 23, 1990, Walsh, J.) (2 Conn. L. Rptr. 324).
Here, the plaintiff sought to sell a license to reproduce the images contained on the transparencies but not the actual transparencies. Incidents of ownership including the right to produce and sell more copies and the right to license the use of a work to others are "incidents of the intellectual, intangible component of . . . property."Northeast Datacom, Inc. v. Wallingford, 212 Conn. 639, 645-46 (1989) (holding that certain elements of software property are intangible); see also Reynaud v. Town of Winchester, Superior Court, judicial district of Litchfleld, Docket No. 059816 (March 16, 1993, Pickett, J.), aff'd,35 Conn. App. 269 (1994) (holding that video cassette tapes are tangible personal property).[3] While transparencies may be considered goods because they are movable, the essence of the contract in the present case is for the use of the image contained on such transparencies. The transaction, then, was not for goods but for intangibles. Although leases and licenses are similar in that they both convey an interest in property, the present transaction cannot be characterized by one in goods and Article Two is not applicable by analogy. CT Page 12023
The plaintiff also claims that Article Two applies to the present transaction pursuant to agreement. This claim is based on the language of the stock requisition form allegedly sent to the defendant by the plaintiff. The plaintiff claims that the defendant's failure to object to the language makes it an enforceable agreement.
The agreement states that the defendant "agrees also to assume an insurer's liability for the safe return of the photographs to [the plaintiff] after they come into our possession. Holding photographs for more than ten (10) days without a written objection to the terms of the Delivery memo that will accompany their submission constitutes acceptance of the aforementioned terms. This request is made pursuant to Article 2 of the Uniform Commercial Code and I agree to be bound by same." (Memorandum in Support of Motion for Summary Judgment, Exhibit 1C.) It is unclear from the language of the agreement whether it was purposed to subject the defendant to the terms of Article Two in its entirety or just the section pertaining to the statute of frauds. See General Statutes § 42a-2-201 (2).
The plaintiff failed to produce a signed copy of the agreement. The plaintiff, however, testified at deposition that a signed copy of the agreement was returned to him. (Defendant's Motion for Summary Judgment, Exhibit A at 34-37.) The defendant's witness, Marion Gotbetter, testified at deposition that she did not sign and return the agreement. (Plaintiff's Motion for Summary Judgment, Exhibit 2 at 41.) Thus, there are issues of material fact as to the existence of a written contract and, if such contract exists, its terms.
The plaintiff also seeks to recover on a theory of bailment. A bailment is defined as "a delivery of goods in trust, upon a contract, express or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered."Zeterstrom v. Thomas, 92 Conn. 702, 704 (1918).
The plaintiff delivered the transparencies to Federal Express. The defendant did not receive the transparencies. In order to establish that the defendant was the bailee, the plaintiff must offer proof that Federal Express was acting as its agent and that delivery to the defendant was thus made.
"The three elements required to show the existence of an agency relationship are: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Levine v. Advest, Inc., 244 Conn. 732, 761
CT Page 12024 (1998). "The existence of agency is a question of fact to be determined by the trier of fact." Gateway Company v. DiNoia, 232 Conn. 223, 240
(1995). The plaintiff fails to address this issue in his combined motion for summary judgment and opposition to the defendant's motion for summary judgment. Because, however, the defendant moves for summary judgment on this ground, the defendant has assumed the burden of providing proof that it is not liable under a theory of bailment and thus must present evidence that Federal Express was not its agent.
The defendant cites Houser v. The Chicano Tribune Company, United States District Court, Docket No. 548 (N.D.Ill. 1992) in support of the position that it lacks control over Federal Express, therefore that element needed to establish an agency relationship is not present. While the defendant's argument and supporting case law are persuasive, the defendant fails to produce affidavits or other evidence regarding the issue of control and, therefore, does not show the absence of an agency relationship.
The defendant claims, in the alternative, that the court may enter summary judgment in its favor because it is a third party beneficiary to the contract between the plaintiff and Federal Express. "The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. . . . [T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our rule, because the parties to the contract so intended. (Citations omitted.) Gazo v. City of Stamford,255 Conn. 245, 261 (2001).
The issue of intent is ordinarily a question of fact. Suarez v.Dickmont Plastics Corporation, 229 Conn. 99, 111 (1994). The defendant fails to present any evidence from which the court can make a finding with respect to the intent of one of the parties to the contract, Federal Express. Furthermore, the case cited by the defendant, Downey v. FederalExpress Corporation, United States District Court, Docket No. 4956 (N.D.Cal. 1993), superseded by statute, Roberts Distributor, Inc. v.Federal Express Corporation, 917 F. Sup. 630
(S.D.Ind. 1996), differs from the present case in two substantial ways. CT Page 12025 There the court found that the purpose of the contract was to benefit the owner of the transparencies. Also, the third party beneficiary was seeking to recover from the promisor, as ordinarily happens when a third party beneficiary relationship is asserted.
Assuming that the defendant proves that it was a third party beneficiary, the defendant argues that as a third-party beneficiary, it should not be subject to greater liability than the promisor and should be permitted to "step into the shoes of" the other parties to the contract in defending this action. (Memorandum in Support of Motion for Summary Judgment at 15.) The defendant poses this as an equitable argument, following on the principle that a third party beneficiary does not acquire a "better right against the promisor than the promisee had." Id., citing Dunning v. Leavitt, 85 N.Y. 30, 35 (1881). The purpose of the third party beneficiary doctrine, however, is to determine whether a party may enforce the terms of a contract, not to provide a defense to payment. Den Adel v. Blattman, 57 Wash.2d 337, 357 P.2d 159 (1960).
There are issues of fact regarding the existence of a contract between the parties and whether that contract imposes the risk of loss provisions of Article Two, and there are issues of fact regarding a bailment relationship. Accordingly, both motions for summary judgment are denied.
DiPentima, J.