751 So.2d 705 (2000)
Morgan GILREATH, etc., Appellant,
v.
GENERAL ELECTRIC COMPANY, Appellee.
No. 5D9-64.
District Court of Appeal of Florida, Fifth District.
February 11, 2000.
*706 Gaylord A. Wood, Jr., and B. Jordan Stuart of Wood & Stuart, P.A., New Smyrna Beach, for Appellant.
John C. Dent, Jr., and Sherri L. Johnson of Dent & Cook, P.A., Sarasota, for Appellee.
DAUKSCH, J.
This is an appeal from a determination by the circuit court that computer software is taxable as intangible personal property, that section 192.001(19) is a constitutionally valid statute and that the valuations and assessments made by appellant tax collector were improper.
The property in question is computer software used to operate simulation machines. These simulators were devised and put to use by appellee General Electric Co. and Martin Marietta Corp. and were for flight training and combat tank operational training.
Because we agree with the findings and the result reached by the circuit court judge and because the well-reasoned judgment from that court cannot be improved upon, we adopt it as the opinion of this court.
FINAL JUDGMENT ON NONJURY TRIAL
These consolidated cases came on for nonjury trial on November 20, 23, 24 and 25, 1998. The Court, having considered the pleadings, testimonial and documentary evidence, and the oral and written arguments of counsel for the respective parties, and being otherwise fully advised in the premises, finds and concludes, as follows:
I. FACTS:
A. During the years 1992, 1994 and 1995, the plaintiffs in these three consolidated cases, General Electric Company ("GE"), and Martin Marietta Corporation ("Martin"), owned two prototype computer simulation systems. The COMPU-SCENE VI was a simulator for flight training, while the PT-2000 was a tank driver trainer. The simulator prototypes were build [sic] primarily as "proof of concept" systems, intended to determine technical feasibility, and were not designed for resale. Both systems were developed over a number of years through the construction of prototypes at facilities located in Volusia County, Florida. The facilities in Volusia County were transferred from plaintiff, GE, to plaintiff, Martin, between 1992 and 1994.
B. The prototypes were composed of various components that were loosely joined together to test various concepts as the systems were developed. Fundamentally, the prototypes consisted of complex custom software, and the computer and other hardware used to house the system. Both systems were capable of complex real time simulation of a vast array of effects and conditions. Each prototype system was in use until production models began to be made and sold by the plaintiffs, after which the prototypes were used by plaintiffs for some testing and for some demonstration purposes. The prototypes were sold for scrap value in 1994.
C. The testimony and documents reflect that for 1992. GE timely filed its Tangible Personal Property Tax Return with the defendants, as required by law. (Defendants' Exhibit No. 1). The proto-types *707 were included in the return at value of $7,105,000 for the tank driver simulator and $7,025,000 for the flight simulator. (Defendants' Exhibit No. 5). Thereafter on October 5, 1991, GE filed what it styled an "amended return," in which the two simulators were valued at a combined value of $4,244,000.00, or about $9,900,000.00 less than in the original return. (Plaintiff's Exhibit No. 4).
D. The defendant, Property Appraiser of Volusia County, assessed the prototypes in 1991 at a total value of $14,129,914.00. GE paid $266,564 in taxes under protest, and unsuccessfully appealed to the Value Adjustment Board pursuant to Section 94.011, Florida Statutes. Case No. 92-10367 was thereafter commenced in accordance with Section 194.171, Florida Statutes.

E. In 1993, the Property Appraiser again assessed a tangible personal property tax assessment against the two prototypes, which were now owned by plaintiff, Martin. Martin returned the value of the prototypes at $3,475,000.00, but the Property Appraiser assessed the value of the two systems at $6,705,698.00. The Value Adjustment Board again denied relief (Defendants' Exh. 20), and Case No. 94-10343 was filed. The identical scenario occurred in 1994, except that the two prototypes were returned by Martin at $7,555.00, and were valued by the Tax Assessor at $4,020,464.00. Case No. 94-11173 concerns the 1994 assessment.
F. In 1994, the simulator prototypes were sold essentially for scrap for $8,700.
G. In 1997, the Florida Legislature enacted Senate Bill 918 (Plaintiffs' Exhibit No. 7), which amended Section 192.001(19), Florida Statutes. After defining the term, "computer software," and excluding "embedded software" from the definition, the Legislature went on to say as follows:
Computer software constitutes personal property only to the extent of the value of the unmounted or uninstalled medium on or in which the information, program or routine is stored or transmitted, and, after installation or mounting by any person, computer software does not increase the value of the computer or computer-related peripheral equipment, or any combination thereof.
The act was made applicable "to all periods open for additional assessment or refund under applicable law." The Property Appraiser attacks the constitutionality of this statute, asserting that the Legislature may not exempt a matter from taxation by the County by artificially defining what is otherwise tangible property as intangible.
H. The $14,129,914 assessment of the Property Appraiser in 1992, was based on the original cost of the PT-2000 and the Compu-Scene VI prototypes, as reported by GE. GE returned this value because it amounted to the accumulated costs incurred by GE with respect to each project.
I. The appraiser for the plaintiffs' was John J. Connolly, III. Relying primarily on the Cost Approach, he opined that the simulators had the following fair market values during the years indicated:

Date PT-2000 Compu-Scene VI
1991 $185,000 $795,000
1993 $110,000 $ 90,000
1994 $ 25,000 $ 45,000

II. DISCUSSION:
A. Software as intangible personal property.
The first issue confronting the court is whether custom computer software is tangible or intangible personal property. The court concludes that it is intangible.
The Florida Constitution permits local governments, including counties, to levy and collect ad valorem taxes on real property and tangible personal property. Art. VII, Section 9, Florida Constitution. The power to tax intangible personal *708 property, however, is reserved only to the State. Art. VII, Sections 1(a), 2 and 9(a), Florida Constitution. Thus, if the custom software is intangible personal property, the County was without authority to assess or collect taxes on it.
Tangible personal property consists of goods, chattels, and other articles of value capable of manual possession and whose chief value is intrinsic to the article itself. Section 192.001(11)(d), Florida Statutes; Appleby v. Nolte, 682 So.2d 1140 (Fla. 4th DCA 1996). Intangible personal property, on the other hand, means money, all evidences of debt, all evidence of ownership in a corporation or other business organization having multiple owners, "and all other forms of property where value is based upon that which the property represents rather than its own intrinsic value." Section 192.001(11)(b), Florida Statutes.

To be frank, the nature of software is not easy to categorize. The plaintiffs suggest that it is simply a series of electrons and binary instructions representing intellectual property, and having no intrinsic value. The defendants argue that the source codes for such programs are reduced to paper, the papaers [sic] may be manually handled, and the end product is inherently extremely valuable. Both sides make valid points, and both positions have been most ably articulated by counsel for the respective parties. The Court, however, after considerable reflection concludes that the plaintiffs' position is more viable.
In Spencer Gifts, Inc. v. Director, Division of Taxation, 3 N.J.[Tax] 482, 512 (1981), the court noted that technological developments may not fit precisely into traditional property concepts. There is a danger in applying tax responsibilities based on concepts developed at different times, for different purposes, without a hint of the technological future. Thomas Jefferson's words inscribed on the walls of the Jefferson Memorial perhaps sum it up:
I am not an advocate for frequent changes in laws and constitutions, but laws and constitutions must go hand in hand with the progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths discovered and manners and opinions change, with the change of circumstances, institutions must advance also to keep pace with the times.
While no appellate court in Florida has addressed the issue, the courts of our sister states have spoken with some frequency. The vast majority of cases cited by the parties and located by the Court have concluded that software is not tangible personal property. See, e.g., District of Columbia v. Universal Computer Associates, Inc., 465 F.2d 615 (D.C.Cir.1972); Computer Associates International, Inc. v. City of East Providence, 615 A.2d 467 (R.I.1992); Northeast Datacom v. City of Wallingford, [212 Conn. 639, ]563 A.2d 688 (1989); Protest of Strayer, [239 Kan. 136, ]716 P.2d 588 (1986); Honeywell Information Systems, Inc. v. Maricopa County, [118 Ariz. 171, ]575 P.2d 801 (1977); Matter of Western Resources, Inc., [22 Kan. App.2d 593, ]919 P.2d 1048 (1996).
The court in Dallas Central Appraisal District v. Tech Data Corp., 930 S.W.2d 119 (Tex.App.1996), nicely summarizes the theory. In holding that computer application software was not tangible personal property subject to local taxation, the appellate court noted that "the `imperceptible binary impulses' that make up computer application software are not capable of being `seen, weighed, measured, felt or otherwise perceived by the senses.'" It noted that the essence of the property is the software itself, and not the tangible medium on which the software might be stored.
The Florida Legislature obviously agreed. In amending Section 192.001(19), it made a sharp distinction between the information, program or *709 routine (the "imperceptible binary impulses"), and the medium on which the information, program or routine is carried. That is to say, as the court interprets this amendment, the Legislature determined that the disk or tape itself was tangible personal property, but the information, program or routine was not. The remainder of the statute clearly indicates that the information, program or routine is not subject to local taxation, because it "does not increase the value of the computer or computer-related peripheral equipment, or any combination thereof."
The most significant case holding to the contrary comes out of the State of Louisiana. In South Central Bell v. Barthelemy, 643 So.2d 1240 (La.1994), the Supreme Court of Louisiana held that software was tangible personal property, and therefore subject to local taxation. Unlike the Florida Legislature and the other courts cited above that have considered the issue, the view of the Louisiana court was that under its civil law system software consisted of knowledge recorded in a physical form. As those physical formsdiscs, tapes, hard drives, etc.have a physical existence, take up space, and make things happen, they are tangible and taxable.
The court disagrees, and concludes that the views expressed in the other cited cases are more persuasive. Perhaps the Supreme Court of Connecticut stated it most succinctly. In Northeast Datacom, Inc. v. City of Wallingford, [212 Conn. 639, ]563 A.2d 688 (1989), the court determined that the physical components of softwarethe same discs, tapes, hard drives, etc.discussed by the Louisiana court, are only "tangential incidents" of the program. It noted that "the fact that tangible property is used to store or transmit the software's binary instructions does not change the character of what is fundamentally a classic form of intellectual property."
Accordingly, based on the evidence presented, and the authorities cited, the software components of the two prototype simulators were intangible personal property and not properly taxed by the Property Assessor.
B. The constitutionality of Section 192.001.
The Property Appraiser contests the constitutionality of Section 192.001, Florida Statutes, as amended by the Legislature in 1997, as one of the issues presented by this case. The court concludes that the statute is constitutional.
The Florida Supreme Court set out certain precepts governing questions of the validity of state tax legislation in Eastern Air Lines Inc. v. Department of Revenue, 455 So.2d 311 (Fla.1984). There, the Court noted as follows (citations omitted from text):
When the state legislature, acting within the scope of its authority, undertakes to exert the taxing power, every presumption in favor of the validity of its action is indulged. Only clear and demonstrated usurpation of power will authorize judicial interference with legislative action. In the field of taxation particularly, the legislature possesses great freedom of classification. The burden is on the one attacking the legislative enactment to negate every conceivable basis which might support it. The state must, of course, proceed upon a rational basis and may not resort to a classification that is palpably arbitrary.

Id., at 314; see also, Miller v. Biggs, 468 So.2d 371 (Fla. 1st DCA 1985).
The defendants have failed to demonstrate a "clear and demonstrated usurpation of power" on the part of the Legislature in the enactment of the amendment to Section 192.001(19). Given the court's view of custom software as intangible personal property, in fact, the amendment seems quite rational and *710 well within the legislative authority of the Florida Legislature.
The position of the defendants is essentially that the Florida Constitution, and in particular Article VII, Section 4, requires the Legislature to justly value all property for ad valorem taxation, except those classes of property specifically excluded by the Constitution. There is little doubt regarding the validity of this position. See, e.g., Sebring Airport Authority v. McIntyre, 718 So.2d 296 (Fla. 2d DCA 1998). The defendants, however, argue that custom software is tangible personal property, and that there are no permitted exemptions for such property. The defendants posit, therefore, that Section 191.002(19) is violative of the Constitution because it creates a class of exempt property where none is permitted.
Because of the view this court takes that custom software is intangible in nature, the classification issue is not met, and the foundation of the defendants' argument fails. Ad valorem taxes on intangible property is specifically reserved to the State by Article VII, Section 9(a) of the Florida Constitution. The defendants therefore have no standing to contest the constitutionality of the method devised by the Legislature to deal with software. Obviously, this court likewise has no reason to deal with whether the defining of software by the Legislature is without value is appropriate, and the court does not reach that issue.
Finally, because of the determination that Section 192.001(19) is constitutional, the court does not reach the issue of whether the Property Appraiser, as a public official, has the standing to attack the constitutionality of an act of the Legislature.
C. The validity of the assessment.
It is clear that the questioned assessments of the Property Appraiser for the three tax years that are the subject of this dispute were based on a valuation of the prototypes which included the custom software as the major element of the valuation. Moreover, those assessments, which were founded on the accumulated costs associated with the development of each prototype, were not truly related to the fair market value of those items.
The only appraisal testimonial and documentary evidence before the court that disassociated the hardware from the custom software, and which attempted to place a fair market value on the on the [sic] assessable property was the appraisal of John J. Connolly, III (Plaintiffs' Exhibit No. 1), and the actual returns filed by the plaintiffs.
The amounts returned by the Plaintiffs for the years in question were higher in 1991 and 1993, than the amounts suggested by Mr. Connolly. Those higher valuations are justified given the uses of the prototypes in those years, and the selling price of production models of the prototypes. In 1994, Martin returned the subject assets at their scrap value. Mr. Connolly reported them at a somewhat higher value for that year. The court finds that the amounts returned for these self-constructed assets by the Plaintiffs in their returns and amended returns for the years 1991 and 1993, and the estimate of value of Mr. Connolly for 1994, are the more credible and believable estimates of value. Those totals, are related in Defendants' Exhibits No. 1, and No. 3, and Plaintiffs' Exhibits No. 1 and No. 4.
The court therefore determines that the fair market values of the two prototypes for tangible personal property tax purposes in the years in question are as follows:

Date Prototypes
1991 $4,244,000
1993 $3,475,000
1994 $ 70,000

D. The credibility of the returns.
Part of the defense put forward by the Property Appraiser is that the *711 returns filed by the Plaintiffs may have been inaccurate due to underreporting of some items of tangible personal property held by the Plaintiffs in Volusia County. The second affirmative defense of the Defendants alleges essentially that the Plaintiffs are not entitled to relief because they failed to value or fully report items of personal property in their returns.
Indeed, the Plaintiffs had difficulties in reconstructing the elements of their returns made many years ago. The Defendants, however, had the burden of proof with respect to this affirmative defense, and the proof of underreporting was no more than speculative and inferential. Accordingly, the court finds that there was a lack of credible evidence adduced to prove underreporting by the Plaintiffs on the returns for the questioned years by the necessary preponderance of the evidence.
Under the circumstances, it is,
ORDERED, DECLARED AND ADJUDGED that:
1. The assessment and valuation of plaintiff, General Electric Company's tangible personal property for 1991, made and fixed by the Defendants is excessive, and the reported property of the said General Electric Company for 1991, should reflect that the combined value of the PT-2000 prototype and the Compu-Scene VI prototype was $4,244,000.
2. The assessment and valuation of plaintiff, Martin Marietta Corporation's, tangible personal property for 1993, made and fixed by the Defendants is excessive, and the reported property of the said Martin Marietta Corporation for 1993, should reflect that the combined value of the PT-2000 prototype and the Compu-Scene VI prototype was $3,475,000.
3. The assessment and valuation of plaintiff, Martin Marietta Corporation's tangible personal property for 1994, made and fixed by the Defendants is excessive, and the reported property of the said Martin Marietta Corporation for 1994, should reflect that the combined value of the PT-2000 prototype and the Compu-Scene VI prototype was $70,000.
4. Taxes for the years in question are to be assessed and collected in accordance with the valuations related above, and any amount of taxes representing an overpayment shall be refunded by the Defendants to the respective Plaintiff.
5. The Court retains jurisdiction to consider costs, and such other relief as is necessary to implement this judgment.
We affirm the judgment of the circuit court and remand for further proceedings to consider costs and any other post-judgment matters.
AFFIRMED.
ANTOON, C.J., and COBB, J., concur.