976 So.2d 1139 (2008)
ACOUSTIC INNOVATIONS, INC., a Florida corporation, Jay Miller, individually, and Joanne Miller, individually, Appellants,
v.
Carey SCHAFER, Appellee.
No. 4D07-1603.
District Court of Appeal of Florida, Fourth District.
February 20, 2008.
Rehearing Denied April 10, 2008.
*1141 Joel B. Rothman and Andrew Seiden of Seiden, Alder, Matthewman & Bloch, P.A., Boca Raton, for appellants.
Bruce S. Rogow and Cynthia E. Gunther of Bruce S. Rogow, P.A., and Michael P. Hamaway of Mombach, Boyle & Hardin, P.A., Fort Lauderdale, for appellee.
HAZOURI, J.
Appellants, Jay Miller ("Miller"), his wife, Joanne Miller, and Acoustic Innovations, Inc. ("Acoustic"), appeal an amended final judgment entered in favor of Appellee, Carey Schafer ("Schafer"); an order severing Acoustic's counterclaims; and an order setting non-jury trial in this matter. Schafer cross-appeals. We affirm in all respects.
This case involves a dispute between Schafer and Miller concerning the parties' ownership interests in Acoustic; a company which was formed to design, develop, manufacture, and sell acoustical paneling, carpeting, furniture, and other fixtures to enhance the physical design, appearance, and acoustics of professional home theaters. In September 1992, Miller incorporated Acoustic as a Florida corporation and issued a "Written Action of the Incorporator and First Board of Directors of Acoustic Innovations, Inc.," in which he identified himself as the sole incorporator, director, president, secretary, treasurer, and shareholder of Acoustic. However, Schafer maintains that he is a fifty percent co-owner and shareholder of Acoustic. Miller disputes that contention. Formal share certificates were never issued.
On August 21, 2000, following a meeting at which Schafer's interest in the company was discussed, Miller presented Schafer with a letter signed by Miller, which stated:
Some time ago we discussed your relationship with Joanne and I, and with Acoustic Innovations, Inc. (the "Company"). Our discussions included both your role on a daily basis as well as your and our expectations with respect to the future of the Company and the benefit which each of us might have from our long-term efforts on its behalf.
Each of us has made an important contribution to the Company and I believe that our various contributions will continue at the same level in the future. With respect to the overall operation and control of the Company, all of its stock has been issued to me, and I am its only officer and director. I want to keep things that way so that I can continue to exercise control over the Company and its business. At the same time, I think it imperative that you be provided with a stake in the future success of Acoustic Innovations.
For that purpose, by this letter the Company agrees that in the event of the sale of the Company or its merger with another company in which the Company is not the surviving corporation (which events this letter refers to as a "Transaction") you will receive one-third (1/3) of the aggregate consideration of the Transaction. Aggregate consideration will include, and be limited to, cash consideration; options, warrants and convertible securities; and notes payable by the other party. You will not be entitled to any other form of compensation, including, without limitation, salaries, consulting *1142 compensation or compensation from an agreement not to compete.
I think it important that we confirm your understanding described in this letter by the end of the year, and so to that end I ask that you sign and return to me the enclosed copy of this letter no later than close of business on September 1st, 2000. We have had the Company's lawyer prepare this letter, and he wants you to discuss this letter with your own lawyer before signing it.
Schafer ultimately signed the letter on February 5, 2001, but did not consult a lawyer. On February 7, 2002, about a year after Schafer signed the letter, Miller terminated him from his employment at Acoustic, and paid him a lump sum severance payment in the amount of $10,000.
On July 5, 2002, Schafer filed a complaint against Miller, Joanne Miller, and Acoustic, in which he requested that the court rule, inter alia, that he was a shareholder in Acoustic. On October 10, 2006, after amending his pleading twice, Schafer filed an "amended" second amended complaint asserting the following causes of action:
Count I: Involuntary Dissolution and Liquidation of Acoustic pursuant to § 607.1430, et. seq., Florida Statutes.
Count II: Equitable Accounting and Dissolution of Acoustic, pursuant to § 620.8801, et. seq., Florida Statutes.
Count III: Common Law Breach of Fiduciary Duty against Jay Miller and Joanne Miller.
Count IV: Declaratory Relief regarding the effect of the August 21, 2000 letter agreement and whether Schafer should be considered either a shareholder, owner or partner of Acoustic.
Acoustic, Miller, and Joanne Miller filed an answer denying that Schafer was a shareholder in Acoustic and asserted that the affirmative defenses of statute of frauds, statute of limitations, laches, and unclean hands barred Schafer's claims. Acoustic filed a counterclaim against Schafer alleging that Schafer misappropriated Acoustic's valuable trade secrets while he was an employee. Schafer filed a reply to affirmative defenses, which denied the affirmative defenses and asserted an avoidance of unclean hands to the affirmative defense of laches.
Acoustic sought to have Schafer's second amended complaint tried together with its counterclaim. However, the trial court entered an order severing Acoustic's counterclaim, over Acoustic's objection. Six days prior to trial, Schafer filed a notice of voluntary dismissal of Count IV of the second amended complaint. Although Schafer abandoned his claim for declaratory relief, his request that the trial court enter an order finding that he was the owner of a fifty percent interest in Acoustic remained.
The case proceeded to a bench trial, after which the trial court entered an amended final judgment in which it found, inter alia, that Schafer was a fifty percent owner and shareholder of Acoustic. It found further that the August 21, 2000 letter agreement was procured by fraud, coercion, and duress, that it was lacking in consideration, and there was no meeting of the minds.
The trial court awarded Schafer a total of $4,475,537.50 in damages. The trial court computed the damage amount by first determining that Schafer was entitled to one half of the "total direct and indirect distributions" Miller had received from Acoustic from 1998 through 2006. The "total direct and indirect distributions" equaled $5,487,335.00. One half of this amount equaled $2,518,537.50 and was due to Schafer from Miller. The trial court next awarded Schafer $1,957,000.00, an amount it characterized as "representing the value of Schafer's shares in [Acoustic] *1143 at the approximate time of Schafer's forced removal from the company," which the amended final judgment states was February 7, 2002. The amended final judgment states that the total value of Acoustic as of December 31, 2001 was $3,914,000.00. The trial court awarded Schafer the value of his shares based on that amount. The trial court then added the two amounts together ($2,518,537.50 + $1,957,000.00) to arrive at a total award "incident to equitable relief" to Schafer, and against Miller, of $4,475,537.50. The trial court also ordered Miller to purchase Schafer's shares in Acoustic for $1,957,000.00. The trial court imposed a constructive trust on all of the shares of stock in Acoustic. The trial court concluded that Joanne Miller was not a shareholder in Acoustic and declined to enter a judgment against her.
When a decision in a non-jury trial is based on findings of fact from disputed evidence, it is reviewed on appeal for competent, substantial evidence. See In re Estate of Sterile, 902 So.2d 915, 922 (Fla. 2d DCA 2005). This is because "the trial judge is in the best position `to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses.'" Id. (quoting Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976)). However, where a trial court's conclusions following a non-jury trial are based upon legal error, the standard of review is de novo. Id.
Acoustic and Miller's (collectively referred to as "Miller") first argument on appeal is that the statute of frauds bars Schafer's claim that he is a fifty percent owner of Acoustic because the claim is based upon an oral agreement for the issuance or transfer of stock that cannot be performed within a year, citing Khawly v. Reboul, 488 So.2d 856, 858 (Fla. 3d DCA 1986). Miller asserts:
Schafer testified that when Acoustic was formed he and Miller entered into an oral agreement that each would be 50% owners of the company. Pursuant to their agreement, Miller would be issued all of the shares initially, but that Miller would transfer Schafer's 50% to him upon request. Schafer testified that several years after the formation of Acoustic he requested that Miller transfer Schafer's shares to him and place Schafer on the books, but Miller never did. Schafer testified that he made this demand in either 1995 or 1996.
Miller argues that this testimony establishes that the oral agreement to transfer stock to Schafer was not capable of being performed in one year. We disagree.
No evidence established the existence of an oral contract incapable of being performed within one year. Miller could have transferred the shares to Schafer immediately after forming the oral agreement, had Schafer requested that he do so. The fact that Schafer waited until a year had passed to request the shares is of no import. As stated by this court in Byam v. Klopcich, 454 So.2d 720 (Fla. 4th DCA 1984), "The general rule is that an oral contract for an indefinite time is not barred by the Statute of Frauds. Only if a contract could not possibly be performed within one year would it fall within the statute." Id. at 721 (citations omitted). Accordingly, the statute of frauds does not bar the enforcement of the oral agreement between Schafer and Miller.
Miller's next argument is that Schafer's claim to be a fifty percent shareholder in Acoustic is barred by the statute of limitations. Miller claims that the statute of limitations on Schafer's claims began to run in 1996, when Schafer made a demand of Miller to be placed on Acoustic's books, and Miller never transferred the shares, citing State Farm Mutual Automobile *1144 Insurance Co. v. Lee, 678 So.2d 818, 821 (Fla.1996) (concluding that a cause of action accrues within the meaning of the statute of limitations when an action may be brought). The statute of limitations applicable to actions founded upon oral agreements is four years. § 95.11(3)(k), Fla. Stat. (2006). Because Schafer did not file any cause of action against Miller to obtain delivery of his shares of stock prior to 2001, Miller claims that the statute of limitations bars Schafer's claim to a fifty percent interest in Acoustic. We disagree.
As Schafer argues, the doctrine of equitable estoppel bars the application of the statute of limitations in this case. As explained in Ryan v. Lobo De Gonzalez, 841 So.2d 510 (Fla. 4th DCA 2003):
"The doctrine of equitable estoppel has been recognized and applied in numerous contexts by the supreme court since the inception of statehood." See Morsani v. Major League Baseball, 739 So.2d 610, 614 (Fla. 2nd DCA 1999), approved in part, 790 So.2d 1071 (Fla.2001) (citations omitted). "The doctrine has also been recognized as a valid defense to a limitations-period defense." Id. (citations omitted). However, equitable estoppel "presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct." See Bell v. Fowler, 99 F.3d 262, 266 n. 2 (8th Cir. 1996) (citing Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1329 (8th Cir. 1995)) (emphasis added). Stated another way, "[e]quitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed." Cook v. Deltona Corp., 753 F.2d 1552, 1563 (11th Cir.1985) (quoting Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1043 n. 7 (10th Cir.1980)) (emphasis added).
Ryan, 841 So.2d at 518-19. The trial court found that Miller's words and actions repeatedly assured Schafer that Miller would honor their agreement. This finding was supported by competent, substantial evidence. Even though Schafer was aware of the facts underlying the cause of action, Miller's behavior caused him to delay filing suit. Thus, Miller is equitably estopped from raising the statute of limitations to bar Schafer's claim that he is a fifty percent shareholder in Acoustic. Because of the applicability of equitable estoppel, the earliest date on which the statute of limitations could have begun running was August 2000, when Miller, Joanne Miller and Schafer met, and Miller advised Schafer that he would no longer be a fifty percent owner, but rather a thirty three and one-third percent owner. It was at that point that Miller made it clear to Schafer that he did not intend to honor their original oral agreement. As noted earlier, Schafer filed suit in July 2002.
Miller contends further that the trial court erred in entering judgment in favor of Schafer because Schafer lacked standing to seek relief under sections 607.1430 and 607.1434, Florida Statutes, where he did not prove that he was "a holder of record of shares in a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." § 607.01401(24), Fla. Stat. (2006) (defining "shareholder" or "stockholder"). This argument fails.
In Smallwood v. Moretti, 128 So.2d 628 (Fla. 3d DCA 1961), the Third District recognized: "[I]t is possible under some circumstances for one to own stock in a corporation though no certificate has been issued to him." Id. at 629 (citation *1145 omitted). Moreover, strict record ownership is not a prerequisite for the holders of equitable or beneficial interests in shares of stock to have standing to sue. See World Time Corp. of Am. v. Mizrachi, 702 So.2d 284, 284-85 (Fla. 4th DCA 1997); see also Mills Dev. Corp. v. Shipp & Head, Inc., 126 Fla. 490, 493, 171 So. 533 (1937) (holding that where individual defendants formed a corporation as agreed, but refused to issue stock to plaintiffs and deprived them of their alleged beneficial interest in a joint adventure, the same equitable rights and remedies were available to plaintiffs as if they had actually received stock, where no intervening rights of innocent third parties would be put in jeopardy). The trial court determined that Schafer was, at all material times, the equitable and beneficial owner of fifty percent of Acoustic's stock. This finding was supported by competent, substantial evidence. Accordingly, Schafer did not lack standing to sue for relief under sections 607.1430 and 607.1434.
Miller also argues that the trial court's judgment is defective on its face because the court awarded Schafer triple relief, citing Grossman v. Greenberg, 619 So.2d 406, 409 (Fla. 3d DCA 1993) (acknowledging that double recovery to plaintiff is improper). Specifically, Miller states:
Rather than ordering either the purchase of Schafer's shares, or the imposition of a constructive trust on Schafer's shares, the lower court ordered a constructive trust upon all the shares, awarded Schafer $1,957,000.00 representing the value of Schafer's shares in Acoustic at the time of Schafer's departure, and required Miller to repurchase the shares for this amount, thus giving Schafer a triple recovery.

(emphasis in original). Miller misrepresents the award in this case. The amended final judgment states in pertinent part:
56. This Court finds and determines that $2,518,537.50 are the damages due from Miller and, accordingly, enters a Final Judgment in Schafer's favor and against Miller for that amount. To the extent the distributions were co-mingled by the Millers, the damages may have to come from their account if separate accounts are not available. This Court further directs that a Final Judgment be entered in favor of Schafer in the amount of $1,957,000.00, said amount representing the value of Schafer's shares in the company at the approximate time of Schafer's forced removal from the company. Miller is ordered to purchase Schafer's shares in Acoustic Innovations for that amount. The total money judgment awarded to Schafer, incident to equitable relief, and against Miller, is $4,475,537.50. The judgment shall bear interest at the rate of eleven percent (11%) per annum, nunc pro tunc.

57. To the extent of the judgment amount of $4,475,537.50 as set forth above, this Court finds and determines that Plaintiff has proven, by clear and convincing evidence, that he is entitled to the imposition of a constructive trust in his favor and orders that a constructive trust be imposed on the shares of stock in Acoustic Innovations.
(emphasis in original).
Miller's claim fails for two reasons. First, the award of the value of the shares to Schafer, and the requirement that Miller purchase Schafer's shares, are one and the same. The trial court's order to Miller to purchase the shares for the value of $1,957,000.00 is intended to ensure that Schafer receives the money, and is not a duplicate award of damages. Second, the trial court's imposition of a constructive trust on all of the shares of stock in Acoustic serves only as a method of securing *1146 Miller's performance, not as an additional award of damages. See Bell v. Smith, 159 Fla. 817, 32 So.2d 829, 832-33 (1947) (recognizing that, in equity, a constructive trust may be imposed to implement a necessary remedy). It should be further noted that section 607.1434(4) authorizes the court to "[u]pon proof of good cause, make any order or grant any equitable relief other than dissolution or liquidation as in its discretion it may deem appropriate." § 607.1434(4), Fla. Stat. (2006).
We decline to discuss the remaining issues on appeal and cross-appeal, as we conclude that they involve fact-driven determinations that are supported by competent, substantial evidence in the record.
Affirmed.
KLEIN and DAMOORGIAN, JJ., concur.