HAZOURI, J.
In 2005, the Appellant, Gary R. Nikolits, Palm Beach County’s Property Appraiser, assessed as tangible personal property for purposes of ad valorem taxation computer software, i.e., “Wireless Services Software,” of the Appellee, Verizon Wireless Personal Communications, L.P. Verizon paid the tax under protest. Nikolits appeals the final judgment following a nonju-ry trial wherein the trial court found that the tax levied was improper. We agree with the trial court’s ruling and affirm because: (1) The Wireless Services Software meets the definition of “computer software” provided by section 192.001(19), Florida Statutes (2008), excluding it from taxation; (2) the Wireless Services Software does not meet the embedded software exception to section 192.001(19); and (3) “computer software” is intangible personal property, placing it outside the taxing power of Palm Beach County.
This appeal involves issues concerning matters of fact and matters of law. In examining the issues regarding the trial court’s “findings of fact from disputed evidence,” they are upheld if supported by “competent, substantial evidence.” Acoustic Innovations, Inc. v. Schafer, 976 So.2d *692 1139, 1143 (Fla. 4th DCA 2008). In reviewing matters of law, we conduct a de novo review. Id.
Verizon operates a mobile switching center in Jupiter, Florida, which contains a computer system known as the Autoplex 1000. The Autoplex consists of a network of computers. Run on the computers are three types of software: boot software, operating system software, and the Wireless Services Software. The taxability of the boot software and the operating system software is not at issue.
The Wireless Services Software enables Verizon to provide to their customers the ability to make a phone call with a cellular phone, as well as send text messages, operate a GPS navigator, and browse the Internet. The Wireless Services Software resides in the Autoplex system, as the Autoplex is the hardware needed to execute the Wireless Services Software.
The Wireless Service Software itself consists of approximately 1,000 separate programs. Ten percent of these programs are needed for basic call processing. The other programs are used for various diagnostic tools, various report generators, and as tools to verify that the software has been installed properly. This means the Autoplex system will still process voice calls even if up to ninety percent of the Wireless Services Software is uninstalled. If all of the Wireless Services Software is uninstalled, the Autoplex processing system would still be up and running, and one could still read e-mail and do those kinds of things on those computers using the tools that come with the operating system.
The trial court found that the Wireless Services Software fit the definition of “computer software” provided by section 192.001(19). It also found that the Wireless Services Software did not fit the “embedded software” exception to the “computer software” definition in section 192.001(19). These findings are supported by competent substantial evidence.
Section 192.001(19) states that:
(19) “Computer software” means any information, program, or routine, or any set of one or more programs, routines, or collections of information used or intended for use to convey information or to cause one or more computers or pieces of computer-related peripheral equipment, or any combination thereof, to perform a task or set of tasks. Without limiting the generality of the definition provided in this subsection, the term includes operating and applications programs and all related documentation. Computer software does not include embedded software that resides permanently in the internal memory of a computer or computer-related peripheral equipment and that is not removable without terminating the operation of the computer or equipment. Computer software constitutes personal property only to the extent of the value of the unmounted or uninstalled medium on or in which the information, program, or routine is stored or transmitted, and, after installation or mounting by any person, computer software does not increase the value of the computer or computer-related peripheral equipment, or any combination thereof.
If the Wireless Services Software fits this definition, then, in accordance with the plain meaning of section 192.001(19), it is not taxable as tangible personal property. If, however, the computer software is “embedded software that resides permanently in the internal memory of a computer ... and [ ] is not removable without terminating the operation of the computer or equipment,” § 192.001(19), it is excluded from the tax exception provided by section 192.001(19) and becomes taxable as tangible personal property.
*693 Nikolits contends the trial court erred because the Autoplex system is not a computer and, as a result, its software is not “computer software.” However, there is competent, substantial evidence to support the trial court’s treatment of the Au-toplex system as a computer, as expert witnesses deemed the Autoplex system a “network of computers.” There is also competent, substantial evidence to support the trial court’s finding that the Wireless Services Software is “computer software” defined by section 192.001(19), and does not fall within the “embedded software” exception. As a result, the Software is not taxable as tangible personal property.
The Wireless Services Software, as “computer software,” is intangible personal property and is therefore outside of the taxing power of Palm Beach County. In so holding, we agree with the Fifth District’s reasoning in Gilreath v. General Electric Co., 751 So.2d 705, 707 (Fla. 5th DCA 2000).
Under the Florida Constitution, local governments and counties have the power “to levy and collect ad valorem taxes on real property and tangible personal property.” Id. (citing Art. VII § 9, Fla. Const.). “The power to tax intangible personal property, however, is reserved only to the State.” Id. at 707-08 (citing Art. VII, §§ 1(a), 2, & 9(a), Fla. Const.). As such, “if the [computer] software is intangible personal property, the County was without authority to assess or collect taxes on it.” Id. at 708.
For purposes of taxation, the Florida Legislature has provided the following definitions of tangible personal property and intangible personal property:
(b) “Intangible personal property” means money, all evidences of debt owed to the taxpayer, all evidences of ownership in a corporation or other business organization having multiple owners, and all other forms of property where value is based upon that which the property represents rather than its own intrinsic value.
(d) “Tangible personal property” means all goods, chattels, and other articles of value (but does not include the vehicular items enumerated in s. 1(b), Art. VII of the State Constitution and elsewhere defined) capable of manual possession and whose chief value is intrinsic to the article itself.
§ 192.001(ll)(b), (d), Fla. Stat. (2008).
In Gilreath, the Fifth District rendered a decision on the same question discussed in this issue, i.e., whether “computer software,” as defined under section 192.001(19), is tangible or intangible personal property. In that case, the court examined section 192.001(19), noting that the definition
made a sharp distinction between the information, program or routine (the “imperceptible binary impulses”), and the medium on which the information, program or routine is carried. That is to say, as the court interprets this amendment, the Legislature determined that the disk or tape itself was tangible personal property, but the information, program or routine was not. The remainder of the statute clearly indicates that the information, program or routine is not subject to local taxation, because it “does not increase the value of the computer or computer-related peripheral equipment, or any combination thereof.”
Gilreath, 751 So.2d at 708-09.
The court also held that “ ‘the fact that tangible property is used to store or transmit the software’s binary instructions does not change the character of what is fundamentally a classic form of intellectual property’ ” that is, in fact, “intangible proper *694 ty.” Id. at 709 (quoting Ne. Datacom, Inc. v. City of Wallingford, 212 Conn. 639, 563 A.2d 688, 691 (1989)).
A close examination of the definition of tangible personal property contained in section 192.001 compels the same result. In particular, that definition states that tangible personal property is “all goods, chattels, and other articles of value ... capable of manual possession and whose chief value is intrinsic to the article itself.” § 192.001(ll)(d). Although computer software’s value is intrinsic in and of itself, as the “essence of the property is the software itself, and not the tangible medium on which the software might be stored,” Gilreath, 751 So.2d at 708, it is property incapable of manual possession. This is because, software, itself, is “not capable of being ‘seen, weighed, measured, felt or otherwise perceived by the senses.’ ” Id. (quoting Dallas Cent. Appraisal Dist. v. Tech Data Corp., 930 S.W.2d 119, 122 (Tex.App.1996)). Rather, the tangible medium on which it is transported and transmitted is the means by which the property is manually possessed.
Therefore, we agree with the Fifth District’s decision in Gilreath and hold that “computer software” is intangible personal property. As such, we affirm the trial court’s decision that the Wireless Services Software is not taxable by Palm Beach County, as it is intangible personal property, which is property outside a county’s taxing authority.

Ajfi.'nned.

WARNER, J., and SHAHOOD, GEORGE A., Senior Judge, concur.