DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD WALTZER** and **ALLAN DETERT,**
Appellants,

v.

**CONRAD & SCHERER, LLP,** a Florida limited liability partnership,
and **WILLIAM R. SCHERER, JR.,**
Appellees.

No. 4D2024-1623

[February 4, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE19-013767.

Matthew P. Leto and Charles P. Gourlis of Leto Law Firm, Miami, and Paul D. Turner and Oliver Birman of Perlman, Bajandas, Yevoli & Albright, Fort Lauderdale, for appellants.

Francesca M. Stein and Scott A. Cole of Cole, Scott & Kissane, P.A., Miami, for appellees.

PER CURIAM.

*Affirmed.*

GROSS and SHEPHERD, JJ., concur.
FORST, J., concurs specially with opinion.

FORST, J., concurring specially.

I agree that the trial court's final judgment in favor of Appellees/Defendants Conrad & Scherer, LLP, and William R. Scherer, Jr., ("the law firm") in this legal malpractice action should be affirmed. The law firm initially represented Appellants/Plaintiffs Richard Waltzer and Allan Detert ("former clients") in former clients' legal action against a third party (the original defendant sued by former clients). After the law firm withdrew from their representation, former clients settled with the original defendant and commenced the instant malpractice claim, *financed by the original defendant.* At various times during the trial, this *highly unusual*

*arrangement* was referenced by the law firm, witnesses, and the trial court. On appeal, former clients argue the trial court erred by allowing testimony and argument concerning the post-settlement "Cooperation Agreement" between former clients and the original defendant, and by permitting expert testimony beyond the scope of disclosed opinions. The impact, former clients argue, was an "ambush."

I disagree with former clients. As discussed below, the trial court sufficiently limited its consideration of the Cooperation Agreement, and former clients generally failed to object to references to this Agreement. The trial court ultimately resolved this case on traditional malpractice principles—breach of the standard of care, causation, and damages—and entered final judgment based on multiple independent findings supported by competent, substantial evidence. Accordingly, affirmance is warranted.

## Background

In 2012, former clients entered into a consulting agreement with Saeed "Steve" Sirang, under which former clients agreed to assist Sirang in acquiring the Diplomat Hotel in exchange for either a 1.5% ownership interest or 1.5% of the cash purchase price at closing. Sirang terminated the agreement in 2013 and ultimately acquired the hotel in 2014 without former clients' involvement.

Former clients retained the law firm, on a contingency basis, to file a lawsuit against Sirang, alleging breach of contract, fraud, breach of fiduciary duty, unjust enrichment, and conspiracy. The lawsuit was filed in July 2015. While former clients relied partially on the consulting agreement, their lawsuit also alleged the existence of an oral joint venture agreement that would have entitled them to much more money than the consulting agreement.

After three years of litigation, Sirang's counsel filed a June 2018 "Renewed Motion to Dismiss or to Strike Plaintiffs' Pleadings, For Sanctions And For Criminal Referral Because Plaintiffs Have Suborned Perjury, Destroyed Evidence And Their Case Is A Lie And A Fraud on the Court." Attached to the motion were affidavits by individuals claiming that former clients had asked the affiants to lie for them in court in exchange for monetary compensation. The parties dispute when this motion was brought to former clients' attention.

Several months after the motion to dismiss was filed, the law firm moved to withdraw. Former clients did not object, and the trial court granted the motion while providing time for former clients to obtain

replacement counsel. Although former clients and the law firm sought to identify substitute counsel, former clients insisted on contingency representation. Facing numerous pending motions, including the above-mentioned June 2018 motion for sanctions, and unable to secure new counsel willing to work on a contingency basis, former clients elected to settle with Sirang.

In addition to a "Confidential Settlement Agreement" that settled and released all claims and counterclaims connected to the 2015 complaint and the subsequent litigation, former clients and Sirang entered into a separate "Confidential Cooperation Agreement." That Agreement provided Sirang would pay former client Waltzer $200,000, fund a contemplated malpractice action against the law firm, select counsel for that action, retain discretion over whether the litigation would proceed, and recover his investment plus 27% of any recovery (after the attorney's fees and Waltzer's payment were deducted).

Funded by Sirang, former clients then filed the present malpractice action. Former clients' malpractice complaint was premised on the theory that, but for the law firm's alleged negligence, the former clients would have prevailed in the underlying litigation against Sirang or obtained a more favorable resolution. Former clients alleged the law firm breached the standard of care by withdrawing at a critical juncture, failing to respond to pending motions, and leaving former clients without sufficient time or information to secure replacement counsel. Former clients further alleged these acts forced a settlement and caused the loss of claims which they had valued in the hundreds of millions of dollars.

The law firm asserted defenses directed to the elements of malpractice, including the law firm's contractual and ethical right to withdraw, lack of proximate causation, and former clients' inability to establish that they would have prevailed in the underlying litigation. The law firm did not plead champerty or illegality of the Cooperation Agreement as affirmative defenses. The law firm's subsequent motions for summary judgment likewise focused on traditional malpractice principles. The trial court denied summary judgment and set the matter for trial.

At trial, references to the Cooperation Agreement surfaced early and repeatedly, without objection. The law firm's opening statement addressed the Agreement as part of the factual backdrop. Former clients introduced the Agreement into evidence and elicited testimony concerning its terms. Sirang testified extensively regarding his financial interest in the litigation and his role in funding it, again without objection.

During trial, the law firm moved for a directed verdict, arguing in part that the Cooperation Agreement undermined former clients' causation theory by demonstrating that their settlement and litigation decisions were not independently driven. Former clients did not object. In response to the law firm's critical comments regarding the Cooperation Agreement, the trial court expressly stated that the Cooperation Agreement was "kind of a separate issue" and "really doesn't drive this case," emphasizing that the dispositive questions were breach, causation, and damages.

Both sides' closing arguments addressed the Cooperation Agreement. The law firm argued that, at a minimum, the Agreement bore on credibility and causation. Former clients conceded the Agreement was relevant to witness credibility while also maintaining the Agreement should not defeat the malpractice claims.

Thereafter, the trial court entered a detailed final judgment in the law firm's favor. Although the court discussed the Cooperation Agreement and expressed concern about its unusual features, the court weighed the Agreement primarily in assessing credibility and context, and then resolved the case on traditional legal malpractice principles.[1]

The court found: (1) the law firm had not breached the standard of care because the law firm's attorneys had worked hard on the case for three years, the case was still in the middle of discovery when the law firm withdrew, and the law firm had both contractual and ethical rights to withdraw; (2) a lack of proximate causation because no evidence existed that the timing of the law firm's withdrawal, rather than the weakness of the case, had prevented the retention of new counsel, especially because former clients had not requested an extension of time to obtain new counsel and former clients independently chose to settle; and (3) a lack of damages because former clients failed to establish they would have prevailed in the underlying litigation against Sirang on the merits but for the law firm's negligence. The trial court explicitly stated it would have reached the same result regardless of the Cooperation Agreement. This appeal follows.

## Analysis

Following a bench trial, the trial court's factual findings are reviewed to determine whether those findings are supported by competent, substantial evidence, while legal conclusions are reviewed de novo. *Jasser v. Saadeh*,

---

[1] The trial court indicated at several points that The Florida Bar should examine the ethics of the Cooperation Agreement and the attorneys who had signed it.

4

91 So. 3d 883, 884 (Fla. 4th DCA 2012); *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008). Evidentiary rulings are reviewed for abuse of discretion. *Nationwide Mut. Fire Ins. Co. v. Bruscarino*, 982 So. 2d 753, 754 (Fla. 4th DCA 2008). Even erroneous rulings do not require reversal unless such rulings result in "a miscarriage of justice." *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1255–57 (Fla. 2014).

Former clients first argue the trial court erred by permitting the law firm to advance unpled defenses based on the Cooperation Agreement. I disagree. The law firm did not become aware of the Cooperation Agreement's existence until Sirang's deposition three years into the lawsuit. In any case, issues not raised by the pleadings may be tried by express or implied consent and treated as if those issues had been raised in the pleadings. Fla. R. Civ. P. 1.190(b); *Hemraj v. Hemraj*, 620 So. 2d 1300, 1301 (Fla. 4th DCA 1993). Here, former clients introduced the Cooperation Agreement into evidence, addressed the Agreement in their opening statement, and elicited testimony concerning the Agreement's terms. Former clients failed to object to much of the testimony which they now challenge, thereby waiving any claim of error. *See Dep't of Revenue v. Vanjaria Enters., Inc.,* 675 So. 2d 252, 254 (Fla. 5th DCA 1996) ("An issue is tried by consent where the parties fail to object to the introduction of evidence on the issue.").

Moreover, the Cooperation Agreement was relevant to issues of credibility, motivation, and causation. A trial court sitting as factfinder is entitled to consider such evidence in weighing testimony. *See* § 90.608(2), Fla. Stat. (2023); *Williams v. State*, 912 So. 2d 66, 68 (Fla. 4th DCA 2005) ("Matters that demonstrate bias include prejudice, an interest in the outcome of a case, and any motivation for a witness to testify untruthfully."). The trial court here did not err in considering the Agreement for these limited purposes.

The Cooperation Agreement was also, by any measure, unusual. The Agreement presumed the validity of the malpractice claims, including the argument on behalf of former clients *and Sirang* that, but for the law firm's negligence, former clients would have prevailed in their lawsuit *against Sirang.*[2] The Agreement also vested a former litigation adversary with control over counsel selection and continuation of the case, and provided

[2] "A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." *Law Off. of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007).

5

for a contingent recovery tied directly to the malpractice action's outcome. Under these circumstances, the trial court did not act unreasonably in questioning witnesses about the Agreement or contemplating whether its terms implicated ethical concerns. Trial judges are not required to ignore facially troubling arrangements that arise in cases before them.

Relatedly, former clients next challenge the admission of certain expert testimony addressing the Cooperation Agreement. Even assuming arguendo that the trial court had erred in permitting testimony beyond the scope of prior disclosures relating to the Cooperation Agreement, any error was harmless. As discussed below, the trial court did not base its ruling on expert opinions regarding the Agreement's ethical propriety,[3] but on former clients' failure to prove breach, causation, and damages. No reasonable possibility exists that the challenged testimony contributed to the judgment. *See Special*, 160 So. 3d at 1256.

Critically, the record does not support former clients' contention that the trial court allowed the court's concerns regarding the Cooperation Agreement to overshadow the merits of former clients' legal malpractice action. The final judgment reflects that the court retained its focus on whether former clients proved the essential elements of legal malpractice: breach, causation, and damages.[4]

The trial court found no breach of the standard of care. The evidence showed the law firm had actively litigated the underlying case for approximately three years, and withdrew at a time when discovery was ongoing and no trial date had been set. The court found the withdrawal was both contractually authorized and ethically permissible. *Horan v. O'Connor*, 832 So. 2d 193, 194 (Fla. 4th DCA 2002).

The court further found former clients had failed to establish causation. Former clients did not present any evidence that the timing of the law firm's withdrawal, rather than the weakness of the underlying claims, prevented former clients from retaining new counsel. Former clients did not seek an extension of time from the trial court to find replacement counsel despite having the opportunity to do so. *See Pennington v. Caggiano*, 723 So. 2d 931, 931 (Fla. 5th DCA 1999) ("Pennington had ample opportunity, almost 90 days from the lawyers' motion and over 60

---

[3] Examining the substance of the expert witnesses' testimony regarding whether the Cooperation Agreement violated "any ethical rules," that testimony merely corroborated the trial court's concerns expressed several times during the trial.

[4] The final judgment presents 128 findings of fact and law. Over eighty percent of these findings do not relate to the Cooperation Agreement.

days from the order permitting them to withdraw, to employ replacement counsel. The lawyers were not responsible for Pennington's failure or inability to do so.").

The trial court also found former clients failed to prove damages. The alleged oral joint venture underlying the prior litigation was not credible and was unsupported by the evidence, and Sirang had the contractual right to terminate the written consulting agreement. Speculative damages cannot support a malpractice claim. *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998). *See also Chipman v. Chonin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992) ("Chipman alleged in his complaint that the defendant's withdrawal as counsel caused him to lose monetary damages in an age discrimination case. . . . Any loss of these damages must be attributable to Chipman himself, since he chose to voluntarily accept his former employer's settlement offer.")

Because each of the trial court's findings independently supports the judgment, former clients were required to demonstrate reversible error as to all of those findings. *TropiFlora, LLC v. Fla. Dep't of Health*, 346 So. 3d 1271, 1276 (Fla. 1st DCA 2022); *Rsch. & Design, Inc. v. Heico Corp.*, 566 So. 2d 290, 290 (Fla. 4th DCA 1990). Former clients have not done so.

## Conclusion

The trial court did not allow collateral ethical issues to supplant the issues properly before it. Rather, the trial court evaluated the Cooperation Agreement as part of the broader factual landscape and resolved the case based on former clients' failure to establish the essential elements of legal malpractice. Notably, former clients' appeal does not indicate any specific error in the trial court's factual findings and legal conclusions concerning the merits of the legal malpractice claim. Because former clients have not demonstrated reversible error as to each independent ground supporting the judgment, affirmance is appropriate. *TropiFlora*, 346 So. 3d at 1276*; Heico*, 566 So. 2d at 290.

*       *       *

***Not final until disposition of timely-filed motion for rehearing.***

7