DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS,**
Appellant,

v.

**WELLNESS PROGRAM SERVICES, LLC, CHRISTOPHER KENNEDY, JEFFREY TARADAY,** and **MARIANO PIOMPINO,**
Appellees.

No. 4D2024-0484

[June 3, 2026]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Ben Tuter, Judge; L.T. Case No. 062021CA015440AXXXCE.

Josie Adelle Warren and Michelle Moore, Senior Assistant Attorneys General, West Palm Beach, for appellant/cross-appellee.

Scott James Edwards of Scott J. Edwards, P.A., Boca Raton, for appellees/cross-appellants Christopher Kennedy and Jeffrey Taraday.

No appearance for appellee Mariano Piompino.

No appearance for appellee Wellness Program Services, LLC.

FORST, J.

Appellant, the Office of the Attorney General, Department of Legal Affairs ("OAG"), appeals the trial court's final judgment, arguing the court erred in entering judgment for Appellee Mariano Piompino and declining to award disgorgement relief against Appellees/Cross-Appellants Christopher Kennedy and Jeffrey Taraday. Cross-Appellants Kennedy and Taraday cross-appeal the same judgment, arguing the trial court's permanent injunction against them is overbroad.

For the reasons that follow, we reverse the judgment for Piompino. We affirm as to all other issues without discussion.

# Background

OAG filed a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") suit against two companies, Wellness Program Services, LLC d/b/a Trusii and Tru Fit Solutions, LLC d/b/a Trusii International (collectively "Trusii"), as well as the three individual Appellees, who were Trusii's owners and corporate officers. Trusii was a "wellness company" that, beginning in 2016, sold machines to Florida consumers that infuse molecular hydrogen into water. Trusii imported the machines from a Korean company called HygenTech.

OAG did not argue that molecular hydrogen water has *no* potential health benefits or that the machines customers received had *no* value. Instead, OAG alleged that Trusii deceived consumers by: (1) making scientifically unsupported claims about its machines' sweeping health benefits on its website; (2) employing a "bait and switch" tactic whereby customers were induced into buying and financing machines with promises of reimbursement through a "case study" program that Trusii then modified to many consumers' detriment; and (3) misleading customers into believing Trusii had a nationwide apparatus for servicing issues with the machines when, in reality, it did not.

After the corporations defaulted, a bench trial was held on the issue of Appellees' individual liability. Taraday and Kennedy were represented by shared counsel and testified in their own defense, while Piompino represented himself and did not testify, though his questioning of witnesses frequently resembled testimony.

OAG presented testimony by two individual customers. The customers described how Trusii tricked them with its "case study." Initially, Trusii promised to reimburse customers for the full cost of their financing installment payments in return for customers providing feedback to Trusii about their experience and making certain marketing posts on social media. However, Trusii later made unilateral changes to the case study, creating additional marketing requirements and, most notably, stating that anyone who provided negative feedback would be removed from the case study. When the trial court pressed Taraday about the rule that negative feedback would result in removal from the case study, Taraday conceded this was true, but argued it was a response to a coordinated campaign by a former Trusii co-owner to spread negative comments about Trusii. Customers also testified that they were denied payments for months in which they *did* comply with all their case study obligations.

### *The evidence against Piompino*

Considerable evidence was presented against Piompino at trial. An investigator testified Piompino's name appeared in corporate records. Another detective testified that Piompino used a company debit card and was the point of contact between Trusii and HygenTech. The most substantial evidence against Piompino came from his fellow Trusii owners, Taraday and Kennedy. Kennedy testified that Piompino helped design the company from the beginning, years before they "even had a product." He said Piompino was an original owner of Trusii even though he was not "on the paperwork." He implied, without directly stating, that Piompino helped control the website.

Taraday identified Piompino as an owner of Trusii and said Piompino handled "a lot of the operations stuff." Taraday said Kennedy and Piompino established Trusii's relationships with the financing companies, including "the entire structure of what we were doing," pointing to an email exhibit showing Piompino and a financing company discussing the case study. Taraday testified Piompino "was in control of handling those form intakes" and "would have pretty substantial conversations with people" about the case study and its terms and conditions before they agreed to purchase. Taraday further testified Piompino oversaw Trusii's finances and that Kennedy and Piompino "always represented to him" the company was functioning properly and was well-capitalized.

Taraday asserted Kennedy and Piompino were both involved in creating, and placing content on, Trusii's website. The trial court asked Taraday if the website's claim, "[t]his will transform your life and you can recover from any health condition or achieve any goal," was "a fair statement based on scientific evidence in the United States when you wrote it[.]" Taraday admitted it was not.

In addition to the evidence which others provided, Piompino's stipulation is important. At the close of OAG's case, OAG said it had secured stipulations from Taraday and Kennedy that "they are co-owners of" and "had the authority to control the operations of the company." OAG asked Piompino to make the same stipulation because "[i]f we receive that stipulation, we don't need to put on any evidence as to his ability to have control of the company, but otherwise we're going to have to put on some evidence as to that fact." Piompino said, "I'll agree and agree to that stipulation for myself also." The court asked the parties to "write up the stipulation, what you said here in court" and have everybody sign it "so there's no issue about that at a later date."

3

After both sides rested, the court stated it was "inclined to direct a verdict in" Piompino's favor (sua sponte, apparently) because it had "heard little to no evidence about what he was involved in. . . . Occasionally this and that. You put on no case against him. Didn't call him as a witness." OAG responded that Piompino had stipulated on the record to having the ability to control the company's acts, and that the evidence established he had control of Trusii's bank accounts, negotiated all the finance accounts, and was involved with the case study program, which they had shown was deceptive.

In closing, OAG reminded the trial court that Piompino had stipulated to his ownership and control of Trusii's day-to-day operations and OAG had rested on that basis. OAG asserted it had sent each of the three individual defendants written stipulations consistent with their in-court stipulations, but had not received a response from any of them. OAG asked the trial court to reopen evidence against Piompino if it was not satisfied that his liability was proven, as OAG had withheld further evidence in reliance on Piompino's stipulation. OAG noted the evidence had already established Piompino controlled the bank accounts, signed all the case study checks, communicated and signed agreements with the financing companies, controlled the website domains, and handled the shipping of machines and ordering of their parts. The trial court responded, "I'm not opening up the case to evidence for or against a particular party, unless there's some extraordinary reasons underlying it." Kennedy and Taraday conceded in closing that participants discussed the case study terms with Piompino orally before enrolling in the case study.

The trial court entered a detailed final judgment with findings of fact and law. The trial court found Kennedy and Taraday liable for violating FDUTPA and imposed small civil penalties, as well as permanent injunctions banning them from working with molecular hydrogen or with any business involving consumer financing in Florida. The trial court further found "OAG failed to prove these three elements against Piompino" (participation, direct control, or authority to control the deceptive practices) and entered judgment in his favor. The judgment stated the evidence against Piompino was "scant," but "[t]his is not to say he did not participate in the inner workings of the company." The trial court also declined to order disgorgement from any of the three defendants.

OAG moved for rehearing, raising the arguments which it now raises on appeal. Cross-Appellants Kennedy and Taraday moved to amend the judgment to narrow the injunction, making the arguments which they now make on cross-appeal. The trial court denied both motions. This appeal and cross-appeal follow.

4

## Analysis

"When a decision in a non-jury trial is based on findings of fact from disputed evidence, it is reviewed on appeal for competent, substantial evidence. . . . However, where a trial court's conclusions following a non-jury trial are based upon legal error, the standard of review is *de novo.*" *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008) (citations omitted).

"In order to prove individual liability it is necessary to show that an individual defendant actively participated in **or** had some measure of control over the corporation's deceptive practices." *Bechor v. Simcenter, Inc.*, 394 So. 3d 666, 669 (Fla. 3d DCA 2024) (emphasis added) (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073–74 (Fla. 5th DCA 2008)). Factually, a great deal of trial evidence implicated Piompino in the acts which the trial court found to be fraudulent. The "some measure of control" requirement was satisfied when Piompino agreed to stipulate he "had the authority to control the operations of the company." This stipulation was buttressed by Taraday's and Kennedy's testimony at trial.

Permitting Piompino to escape liability for his conduct by agreeing to a stipulation on the record, and then refusing to sign its reduction to writing after OAG rested its case in reliance on said stipulation. *Cf. Roskind v. Roskind*, 552 So. 2d 1155, 1156 (Fla. 3d DCA 1989) ("A stipulation properly entered into the record, where there is a clear understanding of the finality of that agreement, is an effective and enforceable settlement notwithstanding that it is subject to reduction to a written document."). While reopening the evidence would not be an inappropriate remedy, it is unnecessary here because Piompino's liability was already sufficiently proven at trial.

The trial court's framing of OAG's burden of proof against Piompino under FDUTPA was legal error, and its finding that OAG failed to prove Piompino's participation in, direct control of, or authority to control the practices it found deceptive was not supported by competent, substantial evidence. The trial record shows Piompino was as heavily involved in the fraudulent practices—especially the website and dealings with the financing companies—as Kennedy and Taraday.

## Conclusion

For these reasons, we reverse the judgment for Piompino and remand with instructions to enter judgment for OAG against Piompino

5

proportionate to the judgment entered against Kennedy and Taraday.  As noted *supra*, we affirm on all other issues without discussion.

*Affirmed in part; reversed in part; and remanded with instructions.*

KUNTZ, C.J., and MAY, J., concur.

\* \* \*

***Not final until disposition of timely-filed motion for rehearing.***